C. WILDERMANN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8289.   Promulgated October 11, 1927.

> 1. During the taxable years the petitioner corporation under an arrangement with a bank paid certain amounts to a trustee for the bank in liquidation of certain indebtedness of the president of the petitioner corporation to the bank. *Held,* that the amount paid constituted additional compensation for the services of the president and is deductible from gross income.
>
> 2. The petitioner corporation paid a pension to its retired president. *Held,* that the amount is legally deductible from gross income.
>
> 3. The action of the Commissioner in reducing invested capital by $40,000 for good will was in error.

*Walter H. Dodd, Esq.,* for the petitioner.
*W. F. Gibbs, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits tax for the fiscal years ended June 30, 1920, and June 30, 1921, in the respective amounts of $2,461.96 and $2,821.39. The petitioner alleges as errors, (1) disallowance as expenses of payments to Herbert E. Benjamin as trustee pursuant to a contract with the Second National Bank of Hoboken, N. J., (2) disallowance as expense of pensions paid to a retired employee, and (3) reduction of invested capital by $40,000 for good will. At the hearing counsel for the Commissioner moved to increase the deficiency for the fiscal year ended June 30, 1920, to conform to the proof and to disallow $1,500 of the salary allowed as a deduction for Herbert E. Benjamin, since the proof showed that he was paid a salary of only $500 during the year.

#### FINDINGS OF FACT.

Petitioner is a New York corporation, organized in 1901 to take over the business of Charles Wildermann, which was established in 1883. Charles Wildermann, prior to immigrating to the United States in 1882, had been engaged in the business of buying and selling

church goods. In 1883 he established a similar business on Barclay Street, in New York City, and began dealing in Catholic Church supplies, religious articles, prayer books, bibles, etc. He made certain European connections and imported some of these goods. He also took orders for church vestments which were manufactured in Europe.

In 1901 Charles Wildermann visited Europe, but before doing so organized the petitioner corporation to continue his business in the United States. The corporation was organized with a capital stock of $100,000. The minute book of the corporation, under date of June 19, 1901, shows as follows:

The Secretary then reported:

That there have been issued to Mr. Charles Wildermann five hundred ten (510) shares of the capital stock of said Company, calculated at the rate of One Hundred ($100) Dollars per share, for which said Charles Wildermann has paid in cash.

That there have been issued to Jean Weil ten (10) shares of the capital stock of said Company, for which said Jean Weil has paid by draft on Bowery Savings Bank, signed by Josephine Weil, on account No. 490,999, of said bank, in favor of Charles Wildermann, for One Thousand ($1,000) Dollars.

That there have been issued to Ferdinand Wildermann two hundred forty (240) shares of the capital stock of said Company, calculated at the par value of One Hundred ($100) Dollars each, for which said Ferdinand Wildermann has paid as follows:

Ten Thousand ($10,000) Dollars in cash; and

Fourteen Thousand ($14,000) Dollars in one hundred forty (140) shares of said Company issued to said Ferdinand Wildermann and by said Ferdinand Wildermann to said Charles Wildermann delivered, together with a written order upon Frederick Hüffer and Anton Hüffer, of Munster, Westphalia, Germany, said Charles Wildermann to surrender to said Frederick Hüffer and Anton Hüffer the said one hundred forty (140) shares of stock upon the receipt by him of said sum of Fourteen Thousand ($14,000) Dollars, in money of the United States.

That there have been issued to Clement Vonnegut two hundred forty (240) shares of the capital stock of the said C. Wildermann Company, calculated at the par value of One Hundred ($100) Dollars each, for which there was paid Five Thousand ($5,000) Dollars and one hundred ninety (190) shares of stock of said Company, which said Charles Wildermann agrees to deliver to Felix Vonnegut, at Munster, Westphalia, Germany, upon receipt by said Charles Wildermann of the sum of Nineteen Thousand ($19,000) Dollars, calculated in currency of the United States, or other consideration agreeable to said Charles Wildermann.

Furthermore resolved that said Charles Wildermann be, and he hereby is authorized to collect said One Thousand ($1,000) Dollars upon said draft No. 490,000, issued by Jean Weil in payment of the ten (10) shares of stock, the balance of Fourteen Thousand ($14,000) Dollars due upon the two hundred forty (240) shares of stock issued to Ferdinand Wildermann; and the balance of Nineteen Thousand ($19,000) Dollars due upon the shares issued to Clement Vonnegut; and to apply the same on the sum of One Hundred Thousand ($100,000) Dollars due from said C. Wildermann Company to said Charles

Wildermann for the transfer by said Charles Wildermann to said C. Wilder-
mann Company, made in pursuance to said agreements of August 18, 1900, and
the 19th day of June, 1901, and that the Treasurer be directed to pay to said
Charles Wildermann the balance remaining unpaid of said One Hundred
Thousand ($100,000) Dollars.

The Secretary further reported that in accordance with the agreement
entered into on the 18th day of August, 1900, between Charles Wildermann,
Ferdinand Wildermann and Clement Vonnegut, and the agreement entered into
on the 19th day of June, 1901, between Charles Wildermann, Ferdinand Wilder-
mann, Clement Vonnegut and Jean Weil, the said Charles Wildermann had trans-
ferred to said C. Wildermann Company, the good will of the business of said
Charles Wildermann, and all the trade-marks, copyrights, and all his right,
title and interest in and to a lease of the premises No. 17 Barclay Street, in the
Borough of Manhattan, City of New York, and all transferable agencies, rights
and privileges to said business belonging, in the sum of Forty Thousand
($40,000) Dollars, the fair and reasonable value thereof; and the stocks, fix-
tures, plates, outstanding accounts and choses in action of the business of said
Charles Wildermann, as the same appears by the inventory of said business
of said Charles Wildermann, as in said agreement provided, of the reasonable
value of Sixty Thousand ($60,000) Dollars.

Upon motion made, seconded and carried, it was unanimously

Resolved that the said report be adopted and said transfer and bill of sale
be placed on file, ratified and accepted.

In the absence of the Secretary, Mr. Ferdinand Wildermann reported that
Elise Wildermann and said Charles Wildermann have permitted to remain in
said business, as per said inventory, the additional sum of $45,764.97.

On motion made by Mr. Ferdinand Wildermann and seconded by Mr. Jean
Weil, it was unanimously

Resolved that the said inventory, up to the amount of Sixty Thousand
($60,000) Dollars be accepted by said C. Wildermann Company, in fulfillment
of said agreement.

On motion made by said Ferdinand Wildermann and seconded by Jean Weil,
it was unanimously

Resolved that the said sum of $45,764.97 appearing in excess upon said
inventory, be, in accordance with said proposition accepted by said C. Wilder-
mann Company as a loan and placed to the credit of Elise Wildermann, said
loan from said Elise Wildermann to carry six per cent. interest, and that said
C. Wildermann Company will give to said Elise Wildermann a note for the
sum of $5,764.97, dated the 19th of June, 1901, and payable seven months after
date, with six per cent. interest, and the balance of $40,000 as a loan in the
business, in compliance with the correspondence heretofore had between said
Charles Wildermann, Ferdinand Wildermann and Clement Vonnegut.

The notes of the corporation to the extent of $40,000 which were
given in payment of good will were paid off as follows:

| | | | | |
|---|---|---|---|---|
| July 15, 1903 | $2,500 | | April 1, 1909 | $2,500 |
| January 15, 1904 | 2,500 | | January 17, 1910 | 2,500 |
| January 15, 1905 | 5,000 | | December 1, 1910 | 5,000 |
| January 15, 1906 | 5,000 | | January 12, 1912 | 5,000 |
| January 15, 1907 | 5,000 | | | |
| January 15, 1908 | 5,000 | | | 40,000 |

Although at organization the capital stock of the petitioner was $100,000, a stock dividend of $50,000 was later paid and $50,000 of capital stock was sold for cash at par. By reason of losses sustained by the corporation the capital stock was later reduced to $150,000 to wipe out the deficit.

In 1917 the petitioner was in a desperate financial condition because of its inability to procure funds with which to conduct its business. Its indebtedness to many of its merchandise creditors was long overdue and they were threatening suit. Manufacturers in France refused to ship any more goods until their past shipments had been paid for and their refusal was a particular hardship to the company because the very goods ordered had already been sold to the company's customers in America to be paid for on delivery. Other merchandise which the company had ordered from European suppliers had been shipped to New York, but was being held there in bond because the company had not sufficient funds with which to pay the customs duties. The rent of the company's store and office was in arrears and the salary of its president was unpaid. It was indebted to banks for loans already made and practically all of its accounts receivable had been pledged to the banks and others to secure these loans. Although its stock of merchandise on hand had cost about $60,000, the amount for which it could have been disposed of at the time was only about $25,000 and constituted a most doubtful asset upon which to negotiate a loan. Its liabilities were greatly in excess of its assets.

In this situation it endeavored to obtain credit from two banks but credit was denied on its financial statement. Ferdinand Wildermann, the then president of the corporation, was indebted to the Second National Bank of Hoboken, N. J., for approximately $25,700, and Fritz Wildermann, the son of Charles Wildermann and president of the corporation during the taxable years, was indebted to the same bank to the extent of approximately $9,600. The only securities which the bank had for these loans were shares of stock of the petitioner corporation and life insurance policies, upon which the insured had borrowed money. This bank was finally induced to extend credit to the petitioner, but only upon condition that the company would make as its vice president one Herbert E. Benjamin, who was to act as the bank's representative, and pay to Benjamin, as trustee for the bank, the amount of $115 per week. The corporation was to retire Ferdinand Wildermann as president and cease paying him a salary of $6,000. In lieu of this payment the $115 per week was to be paid to Benjamin as trustee for the bank. A part of this weekly payment was to be used in paying premiums upon the policies of insurance held by the bank as collateral and interest upon the loans made by the

insurance company to the insureds, another part to pay interest upon the bank's loans to the individuals, and the balance to be used to reduce the principal of the loans to the individuals. This agreement was entered into on August 10, 1917, and immediately thereafter the bank advanced money to the corporation to enable it to continue in business. Ferdinand Wildermann ceased to be president in October, 1917, and Fritz Wildermann was made president in his stead. During the taxable years involved herein Fritz Wildermann's salary was $400 per month, plus $100 Christmas bonus, or a total annual salary of $4,900.

Of the $115 paid weekly to Benjamin as trustee during the fiscal years ended June 30, 1920, and June 30, 1921, $2,177.88 was used to pay premiums and interest for the fiscal year ended June 30, 1920, and to reduce the principal of the indebtedness of Fritz Wildermann, and for the succeeding year $1,952.91 was paid in his behalf and applied in similar manner. In his individual tax returns Fritz Wildermann accounted for the money thus paid in his behalf as additional compensation paid to him for services rendered to the corporation.

In its income-tax returns for the fiscal year ended June 30, 1920, the petitioner deducted from gross income as salary of its president $4,875 and an additional $6,810.01 representing amounts paid to Herbert E. Benjamin as trustee and as salary for services performed by him as vice president. The amount paid to him for services rendered was $500. The excess amount of $6,310.01 was paid to him as trustee. The Commissioner disallowed the deduction of $4,810.01, but allowed the deduction of $2,000 paid as compensation to Benjamin.

In its return for the fiscal year ended June 30, 1921, the petitioner deducted from gross income $4,900 for salary of its president, $2,000.04 as salary of Herbert E. Benjamin, and $5,980 representing the amount paid to Benjamin as trustee for the bank. Of this amount the Commissioner disallowed the deduction of $5,980 as not representing an ordinary and necessary expense deductible from gross income.

On August 21, 1912, the board of directors of the petitioner corporation adopted the following resolution:

RESOLVED, that after July 1st, 1912, an annuity of $100.00 per month be paid to each and every member of the Wildermann family who shall have been for the term of fifteen years continuously employed by The C. Wildermann Company, or in the business which was carried on by C. Wildermann in his lifetime and was taken over by The C. Wildermann Company, or his widow or eldest child after he dies.

Said annuity shall be payable monthly, commencing with the expiration of said term of fifteen years, but not before July 1st, 1912, and shall be paid to

said member thereafter during the remainder of his or her natural life and shall be in addition to any other income which he or she might be then receiving from The C. Wildermann Company or elsewhere * * *.

FURTHER RESOLVED, that these resolutions shall be construed to be an obligation on the part of The C. Wildermann Company which shall continue in force for the period of fifty years from and after July 1st, 1912.

During each of the taxable years the petitioner paid $100 per month to Ferdinand Wildermann under authority of the resolution above referred to and claimed the same as a deduction from gross income in its income-tax returns. In determining the deficiencies for the taxable years the Commissioner disallowed the deduction of $1,200 for each year.

The balance sheets of the petitioner for the fiscal years ended June 30, 1919, and June 30, 1920, were as follows:

|  | June 30, 1919 | June 30, 1920 |
|---|---|---|
| ASSETS |  |  |
| Furniture and fixtures and book plates | $9,110.84 | $4,455.51 |
| Good will | 40,000.00 | 40,000.00 |
| Inventory, merchandise and catalogues | 78,459.76 | 81,365.75 |
| Cash on hand and in banks | 3,084.24 | 4,950.95 |
| Accounts receivable | 99,497.78 | 113,806.22 |
| Liberty bonds and War Savings stamps | 460.15 | 719.15 |
| Other assets | 1,926.67 | 1,144.83 |
| Total | 232,539.44 | 246,442.41 |
| LIABILITIES AND CAPITAL |  |  |
| Capital stock | 150,000.00 | 150,000.00 |
| Accounts payable | 28,335.30 | 26,601.75 |
| Notes payable | 62,417.11 | 53,550.78 |
| Surplus | 8,212.97 | 16,289.88 |
| Total | 232,539.44 | 246,442.41 |

In determining invested capital for each of the taxable years the Commissioner excluded from assets $40,000 for good will on the ground that there was no proof that the good will had any value at the time it was paid into the corporation for shares of stock. The invested capital shown by the deficiency letter for the year ended June 30, 1920, is $110,000.

OPINION.

SMITH: 1. Petitioner claims the right to deduct from gross income in its tax returns the amounts paid to Herbert E. Benjamin as trustee of the Second National Bank of Hoboken, N. J., to be applied on the indebtedness to that bank of Ferdinand Wildermann and Fritz Wildermann. It is claimed that these amounts represent additional compensation to the officers of the corporation and as such are deductible from gross income as ordinary and necessary expenses. The evidence is to the effect that Fritz Wildermann, president of the corporation, reported in his individual income-tax returns the amounts

paid on his behalf by the corporation to the bank. He testified as follows:

Q. And were these amounts that were paid by you, by the company, rather, the $115 a week disbursed by Mr. Benjamin for the purpose of paying the insurance premiums and interest on your individual indebtedness and on account of principal?

A. Yes, sir.

Q. They were?

A. Yes.

Q. The amounts that were paid for the account of your indebtedness to the bank which were paid by Mr. Benjamin, were they reported by you in your income tax returns during these years?

A. They were.

Q. Every year in your individual return?

A. Yes, everything that Mr. Benjamin paid for my loan or insurance premium, I included as regular income in my income-tax returns.

There is no evidence that Fritz Wildermann returned in his income-tax returns the amounts paid to Benjamin on his behalf. And if they were it does not appear that they would be deductible from gross income in the corporation's tax returns for the reason that Ferdinand Wildermann rendered no services to the corporation during the taxable years and we can not consider that the amounts paid to Benjamin as trustee were ordinary and necessary expenses. We are, therefore, of the opinion that the only amounts paid to Benjamin as trustee which are deductible from gross income for the fiscal years ended June 30, 1920, and June 30, 1921, are $2,177.88 and $1,952.91, respectively, which constituted additional compensation paid to Fritz Wildermann.

In the determination of the deficiencies the respondent permitted the corporation to deduct from gross income in its return for the fiscal year ended June 30, 1920, $2,000 as salary for Herbert E. Benjamin, vice president of the corporation. The evidence discloses that the only amount paid to him as salary during such fiscal year was $500. The motion of the respondent to disallow the deduction of $1,500 of the amount allowed by the respondent in determining the deficiency is allowed.

2. The evidence shows that the petitioner paid during each of the taxable years $1,200 as a pension to its retired president. The payments were made pursuant to a resolution of the board of directors of the corporation in 1912. The amounts are clearly allowable as deductions from gross income as ordinary and necessary expenses.

3. The respondent disallowed $40,000 claimed as the value of good will acquired by the corporation from Charles Wildermann, the vendor of the business. The facts appear to be that Wildermann turned over his business, consisting of tangibles of $105,764.97 and

good will and intangibles of an estimated value of $40,000 for $100,000 cash and promissory notes of $45,764.97. The predecessor business appears to have been profitable. Charles Wildermann had accumulated a considerable fortune from the conduct of the business and he had persuaded a number of individuals to purchase stock in the corporation at par upon the basis that the good will had a cash value of $40,000 at the date acquired by the corporation. We are satisfied by the evidence that the Commissioner was in error in disallowing any amount from invested capital for good will. It was acquired for $40,000 cash. The notes given therefor were paid prior to the taxable years in the amount of $40,000, representing good will, and the $40,000 should therefore be included in invested capital.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LITTLETON and LOVE.