**SNYDER & BERMAN, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 4708.**

Circuit Court of Appeals, Fourth Circuit.

Dec. 9, 1940.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

Frank G. Davidson, Jr., of Lynchburg, Va., for petitioner.

John J. Pringle, Jr., Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

SOPER, Circuit Judge.

Snyder & Berman, Inc., is a Virginia corporation which operates a retail department store at Lynchburg, Virginia. It seeks a review of a decision of the United States Board of Tax Appeals wherein it was held that in determining the net income of the corporation, subject to income and excess profit taxes for the fiscal years ending on January 31 in the years 1936, 1937 and 1938, respectively, a deduction claimed as an expense for monies paid to an officer of the corporation, while absent from the business on account of sickness, should not be allowed.

The taxpayer deducted from its gross income in each of the years in question the sum of $2,400 which it had paid to Gus Berman, who held the office of assistant secretary and treasurer, but was unable to render service to the corporation during the period as he was undergoing treatment in a hospital for mental disease. He had entered the employ of the corporation in 1919 and served as secretary and treasurer from July, 1922, until 1928, when he left to engage in other work. Returning by request in 1928 as assistant secretary and treasurer, he was actively employed in the business as the financial man, and assisted in the buying and the management until 1934 when he suffered a nervous breakdown.

On May 15, 1935, he was re-elected by the directors to the office of assistant secretary and treasurer, and his salary was fixed at $2,400 per year, approximately the same sum which he had received during his active service in the previous year. It was testified on behalf of the taxpayer by Harry Berman, a brother of Gus Berman and the president of the corporation after the death of his father in 1938, that in 1935 the directors thought that Gus Berman's disability would be temporary. A year later, similar action was taken by the directors who, according to the testimony of the same witness, were still of the opinion that Gus Berman would soon be able to resume his regular duties. On July 1, 1938, a resolution was passed reciting the above payments of salary to Gus Berman, and directed that he "continue to receive a pension of $200 per month". The directors took these actions, according to the testimony of Harry Berman, because they considered Gus Berman a valuable employee and realized that he had not been able to save any substantial amount from the small salary that he had received during this period of active service; and that they desired his good will, wanted him to come back to work, and thought it was in the interest of the business of the corporation to make the payments. The salary was reduced to the sum of $400 per year beginning February 1, 1938, after information had been received from a psychiatrist that the case was hopeless and recovery could not be expected.

The salary paid to Gus Berman for the taxable years was credited to his personal account and used to pay his personal expenses and to support his wife and child. After 1934, the wife and child lived in Alabama, and in 1937, the wife secured a divorce. The directors did not know of the divorce until 1938 and in this year the $400 salary was used mostly for the support of his son. At the time of the hearing before the Board of Tax Appeals in February, 1940, there was reason to believe that Gus Berman had made marked improvement and would soon be able to return to his duties at the store.

The taxpayer is a family corporation. From 1922 until 1938 all of the stock, amounting to 660 shares since 1934, was owned by Hyman Berman, the president of the company, and his three sons, Harry, Fred and Gus. Hyman Berman owned all of the stock except 25 shares each, owned by the sons. Hyman Berman was paid a salary of $5,000 in each of the years in question, and the other sons, Harry and Fred, were paid sums ranging from $2,080 to $3,110 per year. The net profits of the corporation during the period in question ranged from $9,404.40 to $12,881.86 per year.

Upon these facts the taxpayer contends that it was entitled to the deductions claimed under § 23(a) of the Revenue Act

of 1934, 48 Stat. 688, and § 23(a) of the Revenue Act of 1936, 49 Stat. 1658, which are in identical terms as follows:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *." 26 U.S.C.A.Int.Rev.Code, § 23(a) (1).

Reliance is also placed on Article 23(a)—9 of Regulations 86 and 94, which provide in part as follows: "Article 23(a)—9. Pensions—Compensation for injuries—Amounts paid by a taxpayer for pensions to retired employees or to their families or others dependent upon them, on account of injuries received by employees, and lump-sum amounts paid or accrued as compensation for injuries, are proper deductions as ordinary and necessary expenses. Such deductions are limited to the amount not compensated for by insurance or otherwise. When the amount of the salary of an officer or employee is paid for a limited period after his death to his widow or heirs, in recognition of the services rendered by the individual, such payments may be deducted. * * *".

It is not claimed that it is possible to lay down an all-inclusive definition of the words "ordinary and necessary expenses", but on the contrary, it is said that the question is one to be determined according to the particular facts of the individual case. Various decisions are cited in which additional compensation voluntarily paid by a corporation to an officer for past services has been held to be deductible as ordinary and necessary expenses, and to constitute income, as distinguished from gifts, in the hands of the recipient. See Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733; Noel v. Parrott, 4 Cir., 15 F.2d 669; Fisher v. Commissioner, 2 Cir., 59 F.2d 192; Botchford v. Commissioner, 9 Cir., 81 F.2d 914, 110 A.L.R. 281. Reference is also made to decisions of the Department of Internal Revenue: I.T. 3329, 1939—2 C.B. 153; L.O. 1040; 3 C.B. 120 and of the Board, C. Wildermann Co. v. Commissioner of Internal Revenue, 8 B.T.A. 771, where payments in the nature of a

pension were held to be deductible as an ordinary and necessary expense.

The taxpayer contends that the payments in question in the pending case were made in harmony with the doctrine of these cases. It is pointed out that the payments were authorized by the Board of Directors, and credited on the books of the corporation, as salaries rather than as gifts, and were denominated a pension in the resolution of the Board passed in 1938. It is also shown that the only direct testimony as to the reason for the payments indicated that they were intended to compensate and assist a valued employee in distress, who had long served the corporation, in the belief that the business of the corporation would thereby be directly and primarily benefited.

This argument, as we have seen, was based in part upon the admitted facts and in part upon testimony given on behalf of the taxpayer. Taken at its face value, it doubtless tends to support the taxpayer's theory; but in itself it is not conclusive, for it is subject to the final determination of the Board insofar as it may give rise to conflicting findings of fact or conflicting inferences that may reasonably be drawn therefrom. The Board concluded that the facts failed to support the pension theory, since no employee of the company had been paid a pension during its long history, and it was not until the last tax year that Gus Berman was voted a pension as such. As to the motive which inspired the payments the Board made the following findings in its opinion:

"We are persuaded by the facts of record that the father and other brothers of Gus Berman used the family corporation to satisfy an obligation that would otherwise have fallen upon them individually. By continuing Gus Berman on petitioner's payroll as an officer and employee the necessary funds were provided to meet Gus Berman's personal expenses and the expenses of his family. The evidence establishes that the funds thus provided were in fact used for this purpose by the petitioner. * * *

"In weighing the evidence adduced we have recognized that the acts of the directors and the entries on petitioner's books of account are consistent with the theory advanced. Nevertheless, it is our opinion that the disbursements here in-

volved were neither ordinary nor necessary for the conduct of petitioner's business. The disbursements were extraordinary in character, and the corporate directors were influenced in authorizing them by family considerations and blood relationship. L. Schepp Co. [v. Commissioner of Internal Revenue], 25 B.T.A. 419, 429. In voting these disbursements to Gus Berman it was not the business interest of the petitioner which primarily concerned its directors, but the welfare of a son and brother and those dependent upon him. The revenue acts specifically declare that personal and family expense items are not deductible, § 24 Revenue Acts of 1934 and 1936, 26 U.S.C.A.Int.Rev. Acts, pages 675, 832, and this petitioner can not be used as a means of deducting personal and family expense items of Gus Berman under the guise of a salary paid to him as an officer and employee."

Obviously, if the finding of the Board is correct that the disbursements were made in the interest of the family rather than for the benefit of the business, then they were not lawfully deductible as ordinary and necessary expenses of the corporation. Our province is not to review the correctness of the finding, but merely to determine if there was substantial evidence to support it. In our opinion the facts were reasonably susceptible of either interpretation, and it follows that the decision of the Board must be affirmed.