Chesapeake Manufacturing Company, Inc., et al. [1] v. Commissioner. Chesapeake Mfg. Co. v. Commissioner
Docket Nos. 2406-62, 2407-62, 2408-62, 2409-62.
United States Tax Court
T.C. Memo 1964-214; 1964 Tax Ct. Memo LEXIS 276; 23 T.C.M. (CCH) 1284; T.C.M. (RIA) 64214; March 12, 1964
R. Carleton Sharretts, Jr., Munsey Bldg., Baltimore, Md., for the petitioners. Francis O. McDermott, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of petitioners and an addition to tax under section 6651(a) of the Internal Revenue Code *277 of 1954 for failure to file return within the time prescribed by law as follows for the indicated years: Addition to
tax Sec.
Docket
6651(a),
Petitioner
No.
Year
Deficiency
I.R.C. 1954
Chesapeake Mfg. Co., Inc
2406-62
1757
$2,811.30
1958
3,033.94
$303.39
Hyman Land and Sadie Belle Land
2407-62
1954
2,071.65
1956
3,963.64
1957
205.58
1958
794.48
Jacob Land and Dora Land
2408-62
1956
3,294.50
1957
1,428.65
1958
2,341.02
Estate of David Land, Deceased, Maryland
Natl, Bk., Executor, and Bessie Land
2409-62
1954
899.00
1956
1,105.56
1957
1,080.38
1958
779.72
Issues presented for determination are the correctness of the respondent's action (1) in determining that the amounts of $6,625 and $6,305.52 deducted by Chesapeake Manufacturing Company, Inc., in its income tax returns for 1957 and 1958, respectively, as salary paid to David Land in the respective years were not deductible as compensation for personal services, or as pensions, or as ordinary and necessary business expense; (2) in determining that the amounts of $6,500, $6,625, and $6,305.52 reported by David *278 Land in his income tax returns for 1956, 1957, and 1958, respectively, as salary received by him during the respective years from Chesapeake Manufacturing Company, Inc., constituted income to him taxable as dividends; and (3) in determining that certain cash withdrawals from Chesapeake Manufacturing Company, Inc., made by its officer-stockholders, Hyman, David, and Jacob Land during the respective taxable years involved herein constituted income to them taxable as dividends. Findings of Fact Some of the facts have been stipulated. The stipulation and the exhibits annexed thereto are incorporated herein by this reference. The petitioner, Chesapeake Manufacturing Company, Inc., sometimes hereinafter referred to as Chesapeake, is a Maryland corporation with its principal place of business in Baltimore, Maryland. It is engaged in the manufacture of furniture essentially for use in living rooms, bedrooms, and studios. It keeps its books and prepares its income tax returns on a calendar year basis and on an accrual method of accounting. It filed its Federal income tax returns for 1957 and 1958 with the district director in Baltimore, Maryland. At all times during the taxable years *279 involved herein Hyman and Sadie Land were husband and wife and lived in Baltimore, Maryland; Jacob and Dora Land were husband and wife and lived in Baltimore; and David and Bessie Land were husband and wife and lived in Baltimore. For the taxable years here involved, Hyman, Jacob, and David each filed joint Federal income tax returns with their respective wives with the district director in Baltimore, Maryland. On November 9, 1961, David Land died and pursuant to the terms of his will the Maryland National Bank was designated executor of his estate. Chesapeake was incorporated on December 30, 1924. One of its organizers was Simon Land, the father of Hyman, Jacob, David, and Abraham Land. Upon Simon's death, his stock in the corporation passed to his above-mentioned four sons who became substantially the only stockholders and officers of the corporation. In 1945 Chesapeake purchased the stock Abraham owned in it. This left the remaining three brothers as the sole stockholders, with each owning approximately one-third of the stock. Following the withdrawal in 1945 of Abraham from active participation in the conduct of the business of Chesapeake, the remaining three brothers undertook *280 the management of the business. During the taxable years here involved, Hyman, Jacob, and David Land were members of the board of directors of Chesapeake and were officers thereof as follows: Hyman Land
President
David Land
Vice President and Assistant
Secretary-Treasurer
Jacob Land
Secretary-Treasurer
From and after 1945, as well as for some years prior thereto, it was the practice of the three officers of Chesapeake to cause some of their respective expenses to be paid by the corporation's bookkeeper with the corporation's funds. The expenses so paid by the corporation on behalf of its officers were of a personal nature and were, in part, payments for purchases from stores, medical and hospital expenses, estimated taxes, and premiums due on personal life insurance policies. Withdrawals of cash from the corporation were made by the officers as and when they desired. The above-mentioned payments and withdrawals were entered on the books of Chesapeake by its bookkeeper as debits to individual accounts in the names of each of the officers as follows: Hyman Land
Drawing Account No. 45
David Land
Drawing Account No. 46
Jacob Land
Drawing Account No. 47
*281 To the end of 1958, credits were made at the end of the year to the foregoing individual drawing accounts. Such credits represented deductions from the remaining salary due the respective officers for the year which they had not withdrawn. Chesapeake maintained on its books an account entitled "Officers' Joint Drawing, Account No. 49," which was used, in part, to pay premiums on certain life insurance policies then in force on the lives of the respective officer-stockholders. Various and sundry other payments were made through this account which included contributions to the Red Cross, American Cancer Society, the Associated Jewish Charities, and other charitable organizations on behalf of the officer-stockholders. At the end of the year the outstanding balance in the Officers' Joint Drawing Account was closed out with one-third of the balance being debited to the respective officers' drawing accounts. The amounts which represented contributions to charitable organizations and debited to the individual officers' drawing accounts were deducted as charitable contributions on the joint returns of the respective officers for the taxable years here involved in all instances except *282 in the case of Jacob and Dora Land for the year 1956. The insurance policies for which premiums were paid by Chesapeake and charged to the Officers' Joint Drawing Account were as follows: Hyman Land
Jacob Land
David Land
Aetna Life Ins. Co.
Date of Issuance
5/17/29
5/16/29
5/25/29
Policy No.
N795-205
N794 819
N796 222
Assured
H. Land
J. Land
D. Land
Face Amount
$5,00
$4,000
$5,000
Beneficiary
Est. of Assured
Estate
Estate
Owner of Policy
H. Land
J. Land
D. Land
Rt. to Change Beneficiary
H. Land
J. Land
D. Land
Annual Premium
$121.61
$84.20
$133.05
Cash Value 1/1/60
$1,980
$1,344
$2,800
Travelers Life Ins. Co.
Date of Issuance
11/3/34
11/3/34
11/10/34
Policy No.
1839787
1839789
1841188
Assured
H. Land
J. Land
D. Land
Face Amount
$10,000
$10,000
$10,000
Beneficiary
Ches. Mfg. Co.
Ches. Mfg. Co.
Ches. Mfg. Co.
Owner of Policy
H. Land
J. Land
D. Land
Rt. to Change Beneficiary
H. Land
J. Land
D. Land
Annual Premium $195
$175.90
$256.90
Cash Value 1/1/60
$4,766
$4,103
$6,269.20
Metropolitan Life Ins. Co.
Date of Issuance
1/28/35
12/28/34
Policy No.
9560822A
9526045A
Assured
H. Land
J. Land
Face Amount
$5,000
$5,000
Beneficiary
Estate
Estate
Owner of Policy
H. Land
J. Land
Rt. to Change Beneficiary
H. Land
J. Land
Annual Premium $118
$113.15
Cash Value 1/1/60
$2,385
$2,280
Metropolitan Life Ins. Co.
Date of Issuance
8/14/48
8/28/49
9/1/48
Policy No.
17365028A
17622415
17365029
Assured
H. Land
J. Land
D. Land
Face Amount
$10,000
$10,000
$10,000
Beneficiary
Ches. Mfg. Co.
Ches. Mfg. Co.
Ches. Mfg. Co.
Owner of Policy
Ches. Mfg. Co.
Ches. Mfg. Co.
Ches. Mfg. Co.
Rt. to Change Beneficiary
Ches. Mfg. Co.
Ches. Mfg. Co.
Ches. Mfg. Co.
Annual Premium
$326.20
$307.60
$422.30
Cash Value 1/1/60
$2,350
$2,060
$2,800
*283 Salaries authorized by resolution of the board of directors of Chesapeake for officer-stockholders for the years 1938 through 1958 were paid as follows: Year
Hyman Land
David Land
Jacob Land
Abraham Land
Total
1938
$ 3,900
$ 3,900
$ 3,328
$ 2,080
$13,208
1939
3,900
3,900
3,328
2,080
13,208
1940
5,400
5,400
4,828
4,100
19,728
1941
7,900
7,900
7,328
6,600
29,728
1942
20,000
17,500
17,500
15,000
70,000
1943
20,000
17,500
17,500
15,000
70,000
1944
20,000
17,500
17,500
15,000
70,000
1945
20,000
17,500
17,500
15,000
70,000
1946
10,000
7,500
8,500
26,000
1947
20,000
14,000
14,000
48,000
1948
20,000
14,000
14,000
48,000
1949
15,800
9,200
14,000
39,000
1950
20,000
14,000
14,000
48,000
1951
20,000
14,000
14,000
48,000
1952
22,000
10,000
16,000
48,000
1953
22,000
10,000
16,000
48,000
1954
15,000
6,500
12,000
33,500
1955
22,000
10,000
16,000
48,000
1956
13,800
6,500
10,240
30,540
1957
20,000
6,500
16,000
42,500
1958
20,000
6,305
16,000
42,305
The balances of the individual drawing accounts and their aggregate yearly totals *284 as of the end of the years 1945 through 1962 were as follows: End of year
Hyman Land
David Land
Jacob Land
Total
1945
$ 6,677.91
$ (966.24)
$ (60.13)
$ 5,651.54
1946
11,671.36
(447.94)
(882.64)
10,340.78
1947
12,721.00
1,424.46
68.88
14,214.34
1948
7,520.48
59.80
1,471.14
9,051.42
1949
8,358.93
1,187.46
2,781.77
12,328.16
1950
11,262.89
747.93
3,431.12
15,441.94
1951
13,463.30
2,728.46
7,681.12
23,873.88
1952
18,341.12
7,263.44
11,614.47
37,219.03
1953
16,524.92
8,906.97
15,466.45
40,898.34
1954
23,338.62
13,221.21
18,809.56
55,369.39
1955
26,201.78
14,998.03
22,009.60
63,209.41
1956
40,017.79
20,255.20
31,004.84
91,277.83
1957
38,323.80
26,625.44
34,248.48
99,197.72
1958
41,871.62
31,463.18
39,911.96
113,246.76
1959
41,102.71
36,453.56
43,420.52
120,976.79
1960
42,136.83
30,454.46
45,859.33
118,450.62
1961
16,383.89
24,378.88
24,562.82
65,325.59
1962
17,620.69
18,303.30
26,170.56
62,094.55
The net increases or decreases in each individual drawing account for the years 1946 through 1962 were as follows: End of
Hyman
David
Jacob
year
Land
Land
Land
Total
1946
$ 4,993.45
$ (447.94)
$ (882.64)
$ 3,662.87
1947
1,049.64
1,424.46
(813.76)
1,660.34
1948
(5,200.52)
(1,364.66)
1,202.26
(5,362.92)
1949
838.45
1,127.66
1,510.63
3,476.74
1950
2,903.96
(439.53)
649.35
3,113.78
1951
2,202.41
1,980.53
4,250.00
8,432.94
1952
4,875.82
4,535.03
3,933.35
13,344.20
1953
(1,816.20)
1,643.53
3,851.98
3,679.31
1954
6,813.70
4,314.24
3,347.11
14,475.05
1955
2,863.16
1,776.82
3,200.04
7,840.02
1956
13,816.01
5,257.17
8,995.24
28,068.42
1957
(1,693.99)
6,370.24
3,243.64
7,919.89
1958
3,547.82
4,837.74
5,663.48
14,049.04
1959
(768.94)
4,991.38
3,508.56
7,811.00
1960
1,034.12
(5,899.00)
2,438.81
(2,426.07)
1961
(25,751.94)
(6,075.58)
(21,296.51)
(53,124.03)
1962
1,236.80
(6,075.58)
1,607.74
(3,231.04)
*285 The following is a statement of Chesapeake's earned income or loss for the indicated years and its total earned surplus at the end of such years: Earned in-
Earned sur-
Year
come
plus
1952
$16,338.57
$41,295.25
1953
2,538.22
43,833.47
1954
1,959.78
45,793.25
1955
8,574.16
54,367.41
1956
487.43
54,854.84
1957
5,864.20
60,719.04
1958
4,415.24
65,134.28
1959
4,351.01
71,948.15
1960
704.34
72,567.59
1961
(6,534.44)
65,770.49
During the taxable years in issue as well as for some time prior thereto Chesapeake employed C. Willard Amos, a certified public accountant, as its accountant. In that capacity Amos annually prepared certain financial statements for the corporation. The statements so prepared by him were not based on a complete audit of the affairs, including the assets and liabilities, of Chesapeake. As a consequence, Amos did not certify as to the correctness of the financial statements he prepared for Chesapeake. On the basis of the entries contained in the books of Chesapeake relating to the drawing accounts of Hyman, David, and Jacob Land, and nothing further, Amos concluded that the debit balances of such accounts, or *286 net withdrawals at the end of the respective years, should be shown in the financial statements of Chesapeake as "Due from Officers" and he so entered them in such statements. Such debit balances or net withdrawals shown as "Due from Officers" were as follows at the end of the indicated years: Hyman
David
Jacob
Year
Land
Land
Land
Total
1952
$18,341.12
$ 7,263.44
$11,614.47
$ 37,219.03
1953
16,524.92
8,906.97
15,466.45
40,898.34
1954
23,338.62
13,221.21
18,809.56
55,369.39
1955
26,201.78
14,998.03
22,009.60
63,209.41
1956
40,017.79
20,255.26
31,004.84
101,277.89
1957
38,323.80
26,625.44
34,248.48
99,197.72
1958
41,871.62
31,463.18
39,911.96
113,246.76
1959
41,102.71
36,453.56
43,420.52
120,976.79
1960
42,136.83
30,454.46
45,859.33
118,450.62
1961
16,383.89
24,562.82
40,946.71
In connection with his employment and at the end of practically every year in issue, Amos discussed with the officers of Chesapeake the matter of the elimination of the amounts "Due from Officers" by the officers paying the amounts thereof to Chesapeake. Also in connection with his employment Amos, in a letter dated January 8, 1958, advised *287 Hyman Land that if such amounts were not repaid by the officers, the Internal Revenue Service could construe the amounts to be dividends received by the officers from Chesapeake. There is no showing that either the board of directors or the stockholders of Chesapeake ever at any time adopted any resolotion authorizing the personal use by Hyman, David, and Jacob Land of Chesapeake's funds as heretofore set out and as reflected by their respective drawing accounts. Nor is there any showing that the board of directors or the stockholders adopted any resolution or took similar formal action indicating an intent or view on the part of the corporation that the debit balances in the drawing accounts of Hyman, David, and Jacob at the end of the taxable years in issue constituted loans by the corporation to such officer-stockholders. No notes were given evidencing the drawing account balances nor did there exist any formal agreement as to time or method of repayment, or any actual agreement either between the officer-stockholders themselves or between them and Chesapeake to repay such balances. No interest was charged by the corporation nor paid by the officer-stock-holders on the account *288 balances. During the years involved herein and for some time prior thereto Chesapeake did not formally declare and pay any dividends. Nor is there any showing that at any time throughout its existence it formally declared and paid any dividends. In August 1958, the respondent by an internal revenue agent began an audit of the income tax liabilities of Chesapeake and its officer-stockholders. Thereafter, in November 1958, the agent advised Hyman Land and Amos that the cases presented the issue of whether the net balances of the officer-stockholder withdrawals constituted loans or dividends. In 1959 the agent had several conferences with the petitioners' attorney herein and fully informed him as to the issue of loans versus dividends that was involved. In a conference with the attorney in December 1959, the agent stated that he proposed to recommend a deficiency in tax in the cases of the officer-stockholders on the basis that their net withdrawals constituted dividends. The attorney informed the agent that such a basis would be weakened by contemplated action in a local equity proceeding in Baltimore in the case of David Land. In a cause entitled "Ex parte: In the Matter of David *289 Land, an Incompetent" in the Circuit Court No. 2 of Baltimore City, a decree was signed on September 22, 1959, wherein Bessie Land, wife of David Land, was appointed trustee with full power and authority to care for and manage the property of David and upon proper order of the Court to expend cash for his support and maintenance under direction of the Court. Thereafter in the foregoing cause, and in October or November 1960, Bessie Land, Trustee, by Thomas H. Hedrick, her attorney, filed a petition wherein she requested (1) the Court's approval of an agreement which she, subject to Court approval, had entered into with Chesapeake on October 14, 1960, and which, among other things, provided for her sale to Chesapeake of all of the shares of stock of that corporation owned by David, and (2) the Court's authorization for her to consummate the agreement. On November 18, 1960, the Court signed an order in which the requested approval and authorization were granted. In both the petition and the agreement of October 14, 1960, for the sale of David's stock and in the Court's order of November 18, 1960, the balances of the net withdrawals made by David were designated and treated as indebtedness *290 owing by him to Chesapeake. The Court order of November 18, 1960, was entered in an ex parte and nonadversary proceeding. In determining the deficiencies here involved the respondent determined that the following officer-stockholders of Chesapeake made net cash withdrawals from the corporation during the indicated years in the indicated amounts and that such amounts constituted income to them taxable as dividends for such years: Officer-stockholder
Year
Amount
Hyman Land
1954
$ 6,813.70
1956
13,816.01
1958
1,853.83
Jacob Land
1956
8,995.24
1957
3,243.64
1958
5,663.48
David Land
1954
4,314.24
1956
5,257.17
1957
6,370.24
1958
4,837.74
The amount of the earned surplus of Chesapeake at the end of the years 1954, 1956, 1957, and 1958 was in excess of the totals of the above-mentioned net withdrawals for the respective years. Such withdrawals constituted informal dividends to the above-mentioned officer-stockholders for the respective years. For several years prior to 1956, David Land was partially disabled and rendered only limited service to Chesapeake. On an undisclosed date in 1956, he was injured in an automobile accident. *291 From and after the date of the accident, he was totally incapacitated and did not render any further service to Chesapeake. In its corporation income tax returns for 1957 and 1958, Chesapeake reported payments made to David Land of $6,625 and $6,305.52, respectively, as salary paid to him for part-time service rendered as its vice president for the respective years and deducted the respective amounts as salary and as being part of its general and administrative expenses in computing its taxable net income for the respective years. The return for 1957 was executed on March 14, 1958, by Hyman Land as president. The return for 1958 was executed on August 3, 1959, also by him as president and was received by the district director on August 4, 1959. There is no showing that prior to or during 1957 and 1958 either the board of directors of Chesapeake or its stockholders adopted any formal resolution concerning payments to be made to David Land or any other officer other than as authorized salary. The amounts deducted by Chesapeake for 1957 and 1958, respectively, as salary paid David Land during those years were sent to his wife who used them for her living expenses. Such amounts were *292 reported in David's income tax returns for the respective years as salary received from Chesapeake during those years. Amos, in his letter of January 8, 1958, to Hyman Land, heretofore mentioned, recommended that the salary being paid by Chesapeake to David be discontinued as of December 31, 1957, on the ground that David had been disabled for several years and because he performed no work for the corporation, the Internal Revenue Service would not allow any deduction as salary for him. And, further, that while the payments for the past several years had been considered as a pension, there is a limit as to the period of time pensions of this nature can be deducted. In determining the deficiencies for 1957 and 1958 against Chesapeake, the respondent determined that the amounts of $6,625 and $6,305.52 deducted by Chesapeake in its income tax returns as salary paid to David in the respective years were not deductible as compensation for personal services, or as a pension, or as ordinary and necessary business expenses, but constituted dividends to David for such years. In their joint income tax returns for 1956, 1957, and 1958, David Land and Bessie Land reported the receipt by *293 David from Chesapeake Manufacturing Company, Inc., of salaries in the amounts of $6,500, $6,625, and $6,305.52, respectively. In determining the deficiencies in issue against David and Bessie Land, the respondent determined that the foregoing amounts constituted income taxable as dividends to them. Opinion The petitioners take the position that Chesapeake was entitled to deduct in 1957 and 1958 as compensation, or retirement, or other ordinary and necessary business expenses, the amounts of $6,625 and $6,305.52, respectively, which Chesapeake during the respective years sent to the wife of David who used them for her living expenses and which amounts Chesapeake deducted in its income tax returns for such years as salary paid to David for part-time services rendered by him during those years. In support of their position the petitioners rely (1) on the testimony of Hyman to the effect that the payments made to David after his injury in the automobile accident, though designated salary in Chesapeake's return, were regarded as pension and in his estimation were real pension; that it was "more or less the policy of the company [that], the employees who'd been there a long time were *294 taken care of if they became ill" and that he, Hyman, "had an uncle we carried for years and years," and (2) an exhibit which discloses that Chesapeake paid as pension to an unnamed former employee the following amounts during the indicated years: Year
Amount
1952
$1,000
1953
1,200
1954
850
1955
50
1956
50
Total
$3,150
The parties have stipulated that during 1957 Chesapeake had in effect "the UIU Health and Welfare Plan" and in 1958 it had in effect "the UIU Pension Plan" both of which covered employees of Chesapeake "other than officer-stockholders thereof." It is true that Hyman's testimony is to the effect that he regarded the amounts of $6,625 and $6,305.52 here in issue as pension paid to David by Chesapeake and that Amos, in his letter of January 8, 1958, to Hyman, stated that the payments paid to David for the past several years had been considered as a pension. However, the petitioners have not attempted to reconcile the foregoing with the fact that the amounts in issue were shown and deducted as salary paid David for his part-time services for 1957 and 1958, respectively, in the income tax returns of Chespapeake for those years which were prepared *295 by Amos' firm and executed by Hyman. As the record stands the only person who received a pension from Chesapeake from the time of its formation in 1924 through the taxable years in issue was the unnamed former employee who received the above-mentioned total of $3,150 during the 5-year period 1952 through 1956 and who may well have been the uncle of Hyman referred to in the latter's testimony. Further, there is no showing that at any time the stockholders, directors, or officers of Chesapeake established a health, welfare, pension, or retirement plan, or similar plan or plans to provide for its officer-stock-holders. Nor is there any showing or contention that the compensation paid by Chesapeake to David during the years prior to 1957 and 1958 was not fair, reasonable, and ample for the services rendered by him during such prior years. An issue presented in L. Schepp Co., 25 B.T.A. 419 (1932), was the correctness of the respondent's disallowance of a deduction taken by the corporation for salary paid to its vice president, who also was a director and who with her father constituted the sole stockholders of the company. There it was said: When the Commissioner has *296 made a determination, the taxpayer who attacks it must prove by evidence of the services rendered and their value that a correct determination would exceed that of the Commissioner. Where the payments are to kinsfolk or to shareholders, the proof must also show that they were not influenced by family considerations and were not disguised distributions of profits. See Botany Worsted Mills v. United States, 278 U.S. 282; Becker Bros. v. United States, 7 Fed. (2d) 3; United States v. Philadelphia Knitting Mills, 273 Fed. 657; Benz Bros. Co., 20 B.T.A. 1214; C. S. Ferry & Son, Inc., 18 B.T.A. 1261; Home Industry Iron Works, 8 B.T.A. 1267; Meyer Hecht, 2 B.T.A. 319; Gustafson Mfg. Co., 1 B.T.A. 508. In our opinion what was said in the Schepp Company case is applicable here. Cf. Snyder & Berman, Inc., 41 B.T.A. 1180 (1940), affd. 116 F. 2d 165 (C.A. 4, 1940). Since David rendered no service to Chesapeake in 1957 and 1958 and since the amounts here in controversy were sent by Chesapeake to Bessie Land, David's wife, who it is not shown rendered any service *297 to Chesapeake and who used the amounts for her living expenses, we are unable, from the record presented, to conclude as petitioners contend that such amounts were deductible by Chesapeake as compensation paid to David, or as retirement payments made to him, or as other ordinary and necessary business expenses of Chesapeake. The respondent is sustained as to this issue. In determining the deficiencies against David and Bessie Land for 1956, 1957, and 1958, the respondent had determined that the amounts of $6,500, $6,625, and $6,305.52, respectively, reported by them in their income tax returns for the respective years as salary received by David from Chesapeake in such years constituted income taxable to them as dividends. From what has been said above with respect to the preceding issue, we are of the opinion and so hold that the foregoing amounts of $6,625 and $6,305.52 for 1957 and 1958, respectively, constituted disguised distributions to David by Chesapeake of its earnings and profits during those years and consequently were income taxable as dividends to Bessie and David for such years. Respecting the above-mentioned amount of $6,500 for 1956 the record is conflicting as *298 to the services and the amount thereof rendered by David to Chesapeake during that year. Hyman testified that prior to 1956 David was not well but came to Chesapeake's plant almost every day where he helped answer some of the corporation's correspondence and talked to some of the corporation's customers and stated that from the date of the automobile accident in 1956 David was totally incapacitated and unable to do any work. Amos, in his letter of January 8, 1958, to Hyman, stated that David had been disabled for several years prior thereto and had performed no work for Chesapeake. The record is silent as to the date in 1956 of the automobile accident. In the foregoing state of the record we are unable to find that during 1956 David rendered any substantial service to Chesapeake. Since the respondent has determined that the $6,500 received in 1956 and reported as salary received in that year constituted income taxable as dividends, since that determination is presumed to be correct, and since the petitioners have failed to submit evidence to show it is erroneous, we must sustain the respondent as to the year 1956. The remaining issue is whether the net withdrawals in issue made by *299 the officer-stockholders of Chesapeake, namely, Hyman, David, and Jacob, constituted loans to them as petitioners contend or constituted income to them taxable as dividends as respondent determined. By section 316(a) of the Internal Revenue Code of 1954 a dividend is defined to be any distribution of property made by a corporation to its shareholders out of its earnings and profits and that except as otherwise provided every distribution is made out of earnings and profits to the extent thereof. Under the provisions of section 317(a) the foregoing term "property" includes money. Hence the withdrawals here involved are to be deemed dividend distributions as determined by respondent unless the petitioners have affirmatively established the character of the withdrawals as other dividends. Since the corporation was wholly owned by the three officer-stockholders, their control invites special scrutiny. W. T. Wilson, 10 T.C. 251 (1948), affd. 170 F. 2d 423 (C.A. 9, 1948). Whether the withdrawals represented income to the officer-stockholders depends on their intent and whether they took Chesapeake's money for permanent use in lieu of *300 dividends, or whether they were then merely borrowing it. It is the intent at the time the withdrawals were made which is determinative and not the intent in some subsequent year. Harry E. Wiese, 35 B.T.A. 701 (1937), affd. 93 F. 2d 921 (C.A. 8, 1938), certiorari denied 304 U.S. 562 (1938), rehearing denied 304 U.S. 589 (1938); Estate of Helene Simmons, 26 T.C. 409 (1956). The question of the intent of the officer-stockholders at the times of their withdrawals during the years in issue is one of fact to be determined from a consideration of all of the evidence bearing on the question. The petitioners take the position on brief that the record "overwhelmingly" establishes that at the times material hereto when cash was withdrawn from Chesapeake by its officer-stockholders or paid by Chesapeake for their benefit and the amounts thereof were debited to the accounts of the respective officer-stockholders, it was the intention of the latter to repay such amounts in full to Chesapeake and that accordingly such amounts constituted loans. Hyman Land testified to the effect that he recognized the amount of his net withdrawals *301 shown on the books of Chesapeake as a loan and has never considered his, Jacob's and David's net withdrawals as anything else; that his understanding as to such withdrawals was that they constituted a loan which he would have to and would repay; that he knew that he would have to liquidate the amount of such withdrawals and that he had made a serious effort to liquidate it; that there was no actual agreement between him, Jacob, and David for the repayment by them of their respective withdrawals; and that Chesapeake has always expected repayment of such withdrawals. When asked how he knew what Chesapeake has expected, he replied: "Well, between my brothers and myself we had this more or less understanding between ourselves." When asked whether there were any corporate minutes that indicated there was such intention or feeling on the part of the corporation, he replied there were none. He further testified that such payments as he had made, which were after 1958, and which substantially reduced the amount of his withdrawals, were made after the respondent's investigation indicated the tax dangers of the situation and that the payments involved the mortgaging of his home and his assignment *302 to Chesapeake of the life insurance policies on his life shown in our findings. The respondent's investigation was made in the last half of 1958. Jacob Land testified to the effect that he intended to repay his net withdrawals; upon being asked what his intention was during the years 1954 through 1958, he stated: "I didn't give it much thought"; and that in those years he actually did not know that he owed Chesapeake any amount at all. He further testified that about 1957 his brother, Hyman, discussed with him the then amount of Jacob's net withdrawals and informed him that he, Jacob, would "have to pay it up," to which he, Jacob, replied that he would try; that prior to the foregoing occasion, Hyman had not contacted him about the matter; that at the time of the trial, Jacob was unable to state whether he was financially able at the time of the discussion with Hyman to make payment of his then net withdrawals. Jacob's net withdrawals amounted to $31,004.84 at the beginning of 1957 and $34,248.48 at the end of that year. Rather than Jacob paying up as he testified he was told by Hyman that he would have to do, the evidence shows that his net withdrawals thereafter increased so that *303 at the end of 1958, 1959, and 1960 they were $39,911.96, $43,420.52, and $45,859.33. David died prior to the trial herein and as a consequence we are without any testimony from him respecting his drawing account or his withdrawals. However, in the agreement of November 14, 1960, which provided for the sale to Chesapeake of David's stock in that corporation, David's net withdrawals at December 31, 1959, in the amount of $36,453.36 were designated and treated as indebtedness owing to Chesapeake and the agreement provided that payment of $36,453.36 of the sales price of $68,919.62 for the stock was to be discharged by Chesapeake crediting $36,453.36 of the sales price to the withdrawals. Francis M. Case, the bookkeeper for Chesapeake, and who entered its employment in October 1948, testified to the effect that after entering the employment of Chesapeake, he continued to keep the books of the latter in the same manner as they theretofore had been kept and that since prior withdrawals had been shown as indebtedness owing by the officer-stockholders to Chesapeake, he so showed subsequent withdrawals. Amos, Chesapeake's accountant, testified to the effect that since the withdrawals of *304 the officer-stockholders had been shown on Chesapeake's books as indebtedness, he so showed them in the financial statements prepared by him for Chesapeake. Considering the foregoing in the light of the record as a whole, we are unable to find that at the times material hereto when the amounts in issue were withdrawn from Chesapeake by its officer-stockholders or were paid by Chesapeake for their benefit and were debited to the accounts of the respective officer-stockholders it was the intention of the latter to repay such amounts to Chesapeake. Despite the fact that Chesapeake's accountant, Amos, almost yearly called the matter to the attention of Hyman Land, the president of Chesapeake, and pointed out to him the tax dangers inherent in the continued increase of such withdrawals, no dividends were declared and no substantial reduction by way of payment was made in the amounts of the withdrawals until after the respondent's investigation of the tax liability in the latter part of 1958 of Chesapeake and its officer-stockholders. In our opinion the officer-stockholders in making the withdrawals here in controversy took the money of Chesapeake for their personal and permanent use and *305 without thought or intent at that time of making repayment to Chesapeake. Consequently we have concluded and found as a fact that the withdrawals in issue constituted informal dividends to the officer-stockholders for the respective years involved. Cf. Elliott J. Roschuni, 29 T.C. 1193 (1958). Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Hyman Land and Sadie Belle Land, Docket No. 2407-62; Jacob Land and Dora Land, Docket No. 2408-62; and Estate of David Land, deceased, Maryland National Bank, executor, and Bessie Land, Docket No. 2409-62.↩