DESMOND'S, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14465.  Promulgated March 8, 1929.

*A. Calder Mackay, Esq.*, and *Thomas A. Dempsey, Esq.*, for the petitioner.

*C. H. Curl, Esq.*, for the respondent.

740

744

748

### OPINION.

Marquette: The first question raised by the record herein is whether the petitioner, in computing its net income for the years 1919 and 1920, is entitled to deduct in each year the amount of $8,000 paid to C. C. Desmond as salary. The petitioner contends that the salary so paid was reasonable in amount and constituted an ordinary and necessary business expense and is therefore deductible. This the respondent denies.

In our opinion the salary paid to Desmond was neither reasonable in amount nor was it an ordinary and necessary business expense. During the years involved he was clearly physically incapacitated, and had also been adjudged mentally incompetent, although there is evidence that his mental condition had improved. He did not visit the petitioner's place of business and his only services to the petitioner consisted of advice to his wife on how to run the business, and some occasional suggestions concerning the advertisements made by the petitioner. A "necessary business expense," as we understand it, is one which is fairly and properly connected with the sound conduct of a business. Furthermore, assuming for the moment, that in 1919 and 1920 Desmond had recovered from his mental disability, the salary paid to him seems entirely out of proportion to the services rendered, and does not constitute "ordinary and necessary expense" within the meaning of the statute. *Botany Worsted Mills* v. *United States*, 278 U. S. 282; 49 Sup. Ct. 129.

The petitioner introduced evidence to show that Mrs. Desmond's services were worth at least $15,000 per year, whereas she was paid a salary of only $8,000 per year. Conceding this to be true, it does not alter the situation. The fact that Mrs. Desmond accepted a salary which was lower than the value of her services does not render reasonable the salary paid to her husband. On this issue we approve the action of the respondent.

The second question is whether the petitioner is entitled to deduct, in computing its net income for the years 1919 to 1921, inclusive, the amounts paid to Mrs. Desmond for the purpose of carrying on investigations of certain of the petitioner's employees. The evidence shows that the amounts claimed were actually paid to Mrs. Desmond with the approval and consent of the board of directors, on her representation that she intended to use the money in investigation of certain employees, including buyers of the petitioner, and that the making of such investigations was a practice which the petitioner and Desmond had theretofore pursued. The evidence also shows that in past years the petitioner had suffered pecuniary losses due to the dishonesty of employees. There is no question but that the money was actually appropriated by the petitioner and paid to Mrs. Desmond for the purpose mentioned, and it seems under the circumstances, a necessary purpose, and the petitioner definitely parted with its money for that purpose. As to these items the petitioner's contention is sustained.

The third question relates to certain alleged bonuses which the petitioner seeks to deduct in computing its net income for 1920 and 1922. In the petition herein it is alleged that at the end of the years 1920 and 1921 the petitioner gave its employees Christmas bonuses in the form of merchandise orders amounting to $972 and $1,074, respectively, which amounts represented additional compensation to the employees for services rendered. The respondent in his answer denies these allegations and the petitioner has produced no evidence to support them. On the record as to this point we must affirm the action of the respondent.

The fourth question relates to the respondent's action in increasing the petitioner's closing inventories for 1920 and 1921, and thereby increasing the petitioner's income for those years.

In its returns for 1920 and 1921, petitioner reported inventories of $374,111.87 and $327,710.83, respectively, which were determined, in accordance with a practice adopted in 1916 under the retail inventory method. Respondent, acting upon the basis of his examining agent's report, has increased the inventory of 1920 by $14,002.15 and that of 1921 by $56,100.11, resulting in an increase of $14,002.15 in the net income of 1920 and an increase of $42,097.96 in the net income

of 1921. The respondent's determination as to the inventories also was made under the retail inventory method.

The formula used by the petitioner for determining its inventories is set out in the findings of fact by way of an illustration of its application in the determination of the inventory for July, 1916. It may be stated thus:

(a) (Opening inventory+purchases, at retail prices)—mark-downs=retail value of goods on hand at beginning and purchases during year.

(b) Retail value of goods on hand at beginning and purchased during year—cost of goods on hand at beginning and purchased during year=net mark-up.

(c) Net mark-up÷retail value of goods on hand at beginning and purchased during year=percentage of net mark-up.

(d) (Sales+mark-downs)×percentage of net mark-up=cost of sales and mark-downs.

(e) Cost of goods on hand at beginning and purchased during year—cost of sales and mark-downs=cost of goods in closing inventory.

The respondent used the following formula:

(a) (Opening inventory+purchases, at retail prices)—(opening inventory+purchases, at cost)=mark-up.

(b) Mark-up÷(opening inventory+purchases, at retail prices)=percentage of mark-up.

(c) Closing inventory at retail price×(100%—percentage of mark-up)=cost of goods in closing inventory.

Petitioner contends that the formula adopted in 1916 is a correct one for determining the value of inventories at cost, and that its inventories have been consistently determined by this formula in all subsequent years to 1924. It asks, therefore, that we set aside the respondent's determinations, which it terms as arbitrary and unjust, in favor of its own, which it alleges were made in accordance with a consistent and correct inventory practice. The respondent contends that the formula which the petitioner used to determine the inventories of 1920 and 1921 is not in accordance with the regulations, and he denies the correctness of that formula and of the inventory values determined by it. Respondent also denies that petitioner has followed a consistent inventory practice, pointing out that in 1920 petitioner abandoned the practice of verifying the inventory values determined according to its formula, by a physical count of the goods in the inventory priced at cost.

Taking up first the question as to whether the petitioner has followed a consistent inventory practice since 1916, we find that the petitioner's contention in this respect is not supported by the evidence. It was not until 1920, one of the years under consideration, that the petitioner entirely adopted the retail inventory method for income-tax purposes. It is true that in 1916 petitioner instituted the practice of maintaining a running book inventory determined according to the retail inventory method, but at the close of each

year, to and including 1919, the book inventory was adjusted to bring it into conformity with a physical count of the goods on hand valued on the basis of actual cost. No such adjustment was made in 1920, so that the inventory of that year was the first to have been determined under the retail inventory method. It is true also, that the inventories of 1920 and 1921 were computed by the same formula that petitioner had used in maintaining the running book inventory from 1916 to 1919, inclusive, but as has already been pointed out, the final determinations as to inventories from 1916 to 1919 were based upon actual cost of the goods on hand, whereas in 1920 and 1921 such determinations were made on the basis of the retail inventory method, and, as to the latter determinations, they certainly are not representative of cost.

The underlying principle of the retail inventory method is the determination of the inventory value by applying the complement of the percentage of mark-up to the retail value of the inventory. The petitioner and the respondent have attempted by this method to determine the inventories of 1920 and 1921 on the basis of cost, though each by a different formula, and their results differ by the amounts in dispute.

An analysis of the inventory data set out in the findings of fact, which is taken from petitioner's books of account, discloses that there is something fundamentally wrong with the book inventories, for they represent a lesser percentage of the retail values of the inventories than that percentage which is the complement of the percentage of mark-up. According to the petitioner's procedure for determining the percentage of mark-up, that percentage for all departments for 1920 is 29.50 and its complement is 70.50, but the book inventory for that year, $374,111.87, is only 64.71 per cent of the retail value of the inventory, $578,105.16. For 1921 the percentage of mark-up for all departments, computed according to the petitioner's procedure, is 32.47 and its complement is 67.53, but the book inventory of $327,-710.83 is only 55.95 per cent of the retail value of the inventory, $585,704.79. Examination of the formula by which petitioner determined the book inventories, readily discloses the error accountable for these discrepancies. Under this formula the cost value of the inventory is determined by deducting the cost of sales from the total cost of opening inventory and purchases. The error is in computing the cost of sales, which is done by applying to the sales figure, which includes the *gross* mark-up, a percentage which is complementary to the percentage of *net* mark-up. Manifestly, when cost of sales is computed by applying to the sales figure, which includes the *gross* mark-up, a percentage which is complementary to the percentage of *net* mark-up, cost of sales is overstated, and, in that circumstance, the

result of cost of opening inventory plus cost of purchases minus cost of sales is less than the cost value of the closing inventory. We can readily appreciate the reason for the agreement of the parties that petitioner's formula produced fairly accurate results during 1916, 1917, 1918, and 1919, when compared with physical inventories priced at cost, since the mark-downs of those years were but 1.25, .43, .47, and .72 per cent, respectively, of the retail values of the merchandise stock; but it is obvious, from what already has been said, that as appreciable increases in mark-downs are made, as is the case in 1920 and 1921, when they amounted to 4.50 and 3.58 per cent, respectively, there will be a proportionately greater discrepancy due to the error in the formula. Were it not for this error in the petitioner's formula, the resulting inventory valuations would have been $407,564.14 for 1920, and $403,960.18 for 1921, which amounts are equal to those percentages of the retail value of the inventories of those years which are complementary to the respective percentages of mark-up, and there would have been no conflict, in that respect, with any principle of the retail inventory method.

Respondent points out that the formula used by the petitioner for determining the inventories, under the retail inventory method, does not conform with article 1588 of Regulations 62, and that is undoubtedly true. At least, the immediate results of that formula are not what are contemplated by those regulations, and this is due to the error in computing the cost of sales which we have pointed out. On the other hand, it is equally clear that the formula used by the respondent does not conform with the regulations. Article 1588 of Regulations 62 provides:

*Inventories of retail merchants.*—Retail merchants who employ what is known as the "retail method" of pricing inventories may make their returns upon that basis, provided that the use of such method is designated upon the return, that accurate accounts are kept, and that such method is consistently adhered to unless a change is authorized· by the Commissioner. Under this method the goods in the inventory are ordinarily priced at the selling prices, and the total retail value of the goods in each department or of each class of goods is reduced to approximate cost by deducting the percentage which represents the difference between the retail selling value and the purchase price. This percentage is determined by departments of a store or by classes of goods, and should represent as accurately as may be the amounts added to the cost prices of the goods to cover selling and other expenses of doing business and for the margin of profit. In computing the percentage above mentioned, proper adjustment should be made for all mark-ups and mark-downs.

A taxpayer maintaining more than one department in his store or dealing in classes of goods carrying different percentages of gross profit should not use a percentage of profit based upon an average of his entire business, but should compute and use in valuing his inventory the proper percentages for the respective departments or classes of goods.

The regulations require that the percentage of mark-up shall be computed upon the basis of the net mark-up. That is the only construction which can be placed on the provision which requires that " In computing the percentage above mentioned, proper adjustment should be made for all mark-ups and mark-downs," for the only way of carrying this provision into effect is to offset the mark-downs against the mark-ups before computing the percentage of mark-up. The respondent has computed the percentage of mark-up upon the basis of the gross mark-up, which procedure, for the reasons stated, does not conform with the regulations. Had he computed the inventories in the manner seemingly required by the regulations, he would have determined their values to be $407,564.14 for 1920, and $403,-960.18 for 1921, which are the same as would have resulted under the petitioner's formula were it not for the error in computing cost of sales.

However, there is this irony in respondent's action—that, if his assumption that all mark-downs have been actually taken on goods sold and there have been no mark-downs on the goods in the inventories is well founded, he has come closer to an actual cost valuation of the inventories by his formula than he would have had he followed the procedure contemplated by the regulations. As a usual rule the formula used by respondent is not suitable for determining the cost valuation of the inventory, because when there have been mark-downs it is seldom that the inventory does not include some of the marked-down goods; and where there are mark-down goods in the inventory it is obvious that the inventory does not contain the percentage of gross mark-up the complement of which is to be applied to the retail value of the inventory to determine its value. If the unusual circumstances in the respondent's assumption exist, and there is no evidence to the contrary, the formula he has used will result in a cost valuation as closely approximating actual cost as is possible under the retail inventory method. The effect of the procedure outlined in the regulations is to spread the mark-downs ratably over every dollar of sales and every dollar of retail value in the inventory. This procedure might be justified when the inventory is known to contain marked-down goods and the mark-downs can not be segregated as to goods sold and goods in the inventory; but in the actual or assumed circumstances that no mark-downs were made on the goods in the inventory, the procedure is obviously improper in the determination of the cost value of the inventory.

There is no proof in the record which challenges the correctness of the cost values of the inventories determined by the respondent.

Petitioner has rested its entire case on the grounds that the formula adopted in 1916 is a proper one for determining the cost valuations of the inventories and that its inventory practice has been consistent, in the use of that formula, since 1916. These grounds we have found to be erroneous; and lacking proof of error in the inventory values determined by respondent, those values must stand.

The last question is whether the petitioner made false and fraudulent returns for the years 1919, 1920, and 1921, with intent to evade tax. The respondent has asserted the fraud penalty as to each of those years, and the hearing herein having been had prior to the enactment of the Revenue Act of 1928, the burden is upon the petitioner to show the returns were not false and fraudulent. The facts concerning the several transactions at issue, and on which the respondent's determination of fraud is apparently predicated, are fully set forth in the findings of fact herein, and we do not deem it necessary to restate them. It is sufficient to say that in our opinion the petitioner has sustained the burden of proof as to this issue. It is true that the evidence shows that its returns for the years involved contained statements which were untrue, and that it claimed deductions to which it is not entitled. However, the petitioner has shown that these statements were not made with intent to mislead or defraud, and that it believed, and still believes, that it is entitled to the deductions claimed. We are satisfied that the returns were not false or fraudulent with intent to evade tax, and we so hold.

At the hearing the respondent, by an amendment to his answer, prayed that in the event we should hold that the petitioner's returns for any of the years involved were not false and fraudulent with intent to evade tax, we should also hold that the petitioner was negligent in the preparation and filing of such returns, and that the negligence penalty should be asserted. We have carefully considered this phase of the case and we are of opinion that on the record the assertion of the negligence penalty is not warranted.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

VAN FOSSAN concurs in the result.

SMITH dissents on the fourth point, regarding inventories.

---

MURDOCK, dissenting: In my opinion the deduction claimed by the petitioner on account of money paid to one of its officers, for the alleged purpose of conducting investigations of its employees, should be disallowed for lack of evidence showing this amount to have been an ordinary and necessary expense. Furthermore, I do not agree

with the prevailing opinion in its decision on the last point. From the facts and the opinion it is clear that the petitioner made false statements in its returns for the years involved and claimed deductions based on those false statements. There are no facts found from which I could reach the conclusion, stated in the opinion, that the petitioner "believed and still believes that it is not entitled to the deductions claimed." But in any event does a taxpayer's belief that it is entitled to a certain deduction justify a false statement under oath to support the deduction?