C. Morris Watkins v. Commissioner.
Watkins v. Commissioner
Docket No. 24232.
United States Tax Court
1950 Tax Ct. Memo LEXIS 61; 9 T.C.M. (CCH) 995; T.C.M. (RIA) 50264; October 31, 1950
*61 Dan M. Nee, Esq., 1104 Commerce Trust Bldg., Kansas City, Mo., for the petitioner. Elmer L. Corbin, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency of $1,108.90 in petitioner's income tax for 1943. The sole question in issue is whether the Commissioner correctly included in petitioner's taxable income a percentage of the profits of a liquor business, conducted in connection with the operation of a drug store, which the petitioner claims belonged to his son. The year 1942 is also before us by reason of the forgiveness feature of the Current Tax Payment Act of 1943. Findings of Fact Petitioner is, and at all times here material was, a resident of Johnson County, Kansas. He uses as a post office address 6205 Overhill Road, Kansas City, Missouri. His return was filed with the collector of internal revenue for the sixth district of Missouri. For a number of years the petitioner owned and operated a drug store located at 4700 Broadway, Kansas City, Missouri. After the repeal of the Eighteenth Amendment and the passage of the Missouri State Liquor Control Act of 1935, he applied for and received a license *62 to sell liquor at retail at his Broadway drug store. He renewed this license from year to year until 1942. In that year his application for renewal of the license was refused on the ground that he was not a bona fide resident and legal voter of the State of Missouri, but resided in the State of Kansas. Rather than give up the liquor license and the liquor department, which he considered an essential part of his drug store business, petitioner conceived the idea of transferring the liquor department of the business to his son, John Philip Watkins, who was a resident of the State of Missouri and could qualify for a liquor license. The son, known as Philip, was a registered druggist, then 26 years of age, employed by the Sheffield Steel Corporation of Kansas City. The petitioner and Philip talked it over and agreed upon a plan whereby petitioner would transfer the liquor business to him and he would permit the use of his name in securing the license and would devote a portion of his time to looking after the liquor business, after his regular working hours and on Saturdays and Sundays. It was agreed that he would receive as compensation five per cent of the profits from the liquor department. *63 On May 22, 1942, petitioner executed the following bill of sale to Philip: "I., C. Morris Watkins, for value received, hereby sell to Phil Watkins, all of the patent medicines contained in section #4 of the patent medicine department inventory, valued at one thousand dollars ($1,000.00), also all liquor now on hand, located at 4700 Broadway, Kansas City, Missouri. "I also sell to Phil Watkins, patent medicines to the value of one thousand dollars ($1,000.00), located on the South wall of the patent medicine department in the store located at 5901 Main Street, Kansas City, Missouri, as well as all liquor merchandise on hand." Philip immediately took over the management of the liquor business and spent most of his spare time at the drug store in the performance of duties under the agreement with petitioner. He purchased all of the liquors and supervised the business. Petitioner continued to manage the other departments of the drug store and to pay all of the operating expenses. In October 1942 Philip enlisted in the armed services. Early in 1943, while he was stationed at Fort Benning, Georgia, petitioner sent him a check for $687.14, representing his share of the earnings *64 of the liquor department from June 30 to December 31, 1942. On October 22, 1942, Philip gave petitioner a general power of attorney to transact all of his business affairs and on July 9, 1943, a special power to assign all forms to be filed in connection with the issuance of the liquor license. On his release from the army in 1945, Philip returned to Kansas City and began devoting his full time to the drug store and liquor business, which he has continued to do up to the present time. The drug store business was incorporated in 1948. There was then standing to Philip's credit on the books $5,064.80, representing his portion of the profits which had been credited to him since 1942. This amount was paid to him by a check issued by the petitioner June 30, 1948. Philip endorsed the check back to petitioner as part payment for 25 per cent of the stock of the new corporation. He gave petitioner his personal note for the balance of the amount due on the stock. In his return for 1942 petitioner deducted the amount of $687.14 paid to Philip in that year as "Commissions." The Commissioner ruled that the deduction was not allowed. The Commissioner also disallowed $1,620.40 credited to *65 Philip in 1943. Opinion LEMIRE, Judge: It is not clear on the record before us whether the petitioner is claiming that the amount in dispute, that is, the $687.14 paid to Philip in 1942, should be allowed as an expense deduction, as apparently it was claimed in the return, or should be eliminated from gross income by reason of the fact that it belonged to and was taxable to Philip. In any event, it seems to us that the petitioner must prevail. If he intended to make, and in fact did make, a valid transfer to Philip of an interest in the drug store business, consisting of the entire liquor department, whatever may have been his reasons for so doing, the income from the business, to the extent agreed upon by the parties, was his income and should not have been reported by petitioner. If, on the other hand, the arrangement was not intended to be, and in fact was not, a valid transfer of a proprietary interest in the business but, as the Commissioner argues, was nothing more than a device for obtaining a liquor license, then it seems to us that the compensation paid to Philip was an ordinary and necessary business expense, although perhaps not so "ordinary" as "necessary." Without *66 such an arrangement, the petitioner testified, he would have been forced to give up his liquor business to the detriment of the other departments of the drug store. The respondent has not determined, and does not here contend, that the compensation paid Philip for the use of his name and for his part-time services was unreasonable in amount. Unquestionably, Philip would have been entitled to some compensation for his part-time services alone, notwithstanding that he entered the military services before the end of the taxable year. An employer is permitted the deduction of payments reasonable in amount made to an employee serving in the armed forces. See I.T. 3417, 1940-2 C.B., p. 64 and Berkshire Oil Co., 9 T.C. 903. We think that the Commissioner was in error either in including the amount in dispute in petitioner's gross income, or failing to allow the amount as a deduction, whichever was the case. The same is true of the amount of $1,620.40 which was credited to Philip in 1943. Decision will be entered under Rule 50.