**WARE KNITTERS, INC.,**
v.
**UNITED STATES.**
No. 67–54.

United States Court of Claims.
Dec. 3, 1958.

have been illegally exacted by reason of the disallowance of a deduction of salary it paid to its vice-president, Robert L. Nields, while, on leave of absence from plaintiff during World War II, he was employed by the Sikorsky Division of the United Aircraft Corporation, first, as a production pilot, and, later, as an experimental or test pilot.

Its deduction depends upon the proper construction of section 23(a)(1)(A) of the Internal Revenue Code of 1939, as amended, as applied to the facts of this case. This section reads:

"In computing net income there shall be allowed as deductions:

"(a) *Expenses.*

"(1) *Trade or business expenses.*

"(A) *In general.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *" 26 U.S.C.A. § 23(a)(1) (A).

This section allows the deduction of "ordinary and necessary expenses * * * in carrying on any trade or business"; that is to say, speaking broadly, such expenditures as the taxpayer deems proper for its profitable operation. Salaries to officers and employees, of course, are such expenses, but the Act places a limitation on such a deduction. It says they must be reasonable and for services "actually rendered." Do the salary payments made while Nields was employed by Sikorsky come within the statute?

The facts are: All the stock in plaintiff was owned by James F. Nields, Jr., with the exception of 25 shares owned by his wife. Robert L. Nields, to whom the payments in question were made, was the brother of James F. Nields, Jr. In February 1939 Robert was employed as a salesman by the plaintiff company at $18.00 a week. Three years later, on February 21, 1942, he was elected to the Board of Directors, and two days later

Paul P. Lipton, Boston, Mass., for plaintiff.

Harold S. Larsen, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

WHITAKER, Judge.

Plaintiff sues to recover the amount of income and excess profits taxes alleged to

was elected vice-president of the company, and continued as director and vice-president throughout the period in question.

In July 1942 Robert left regular employment with plaintiff and entered the Civilian Pilot Training program. This program required practically his entire time. In August 1942 he joined the Army Air Corps Enlisted Reserve as a private, but continued his services with the Civilian Pilot Training program. After completion of his course, he was given, on September 29, 1942, the rating of an instructor, and thereafter he was engaged by a civilian school, which had a contract with the Army, in instructing Air Force cadets how to fly. For this service he received from the school $150 a month, at first, which was gradually increased to $400 a month.

On April 3, 1944, Robert was discharged from the Army Air Corps Enlisted Reserve, and severed his connection with the Civilian Pilot Training program. Immediately thereupon he accepted employment with the Sikorsky Division of the United Aircraft Corporation at Bridgeport, Connecticut, first, as a production pilot, and, later, as an experimental or test pilot. This division of the United Aircraft Corporation was exclusively engaged in manufacturing airplanes for use by military and naval personnel. While employed by this company Robert received a salary of something over $400 a month. He continued with this company until September 1945, shortly after the cessation of hostilities, and then returned to regular employment with the plaintiff.

Prior to Robert's entry upon the Civilian Pilot Training program, he had received from plaintiff salary as follows: For the fiscal years ending June 30, 1940, $1,366.00; June 30, 1941, $2,761.00; and June 30, 1942, $9,848.55. For the three years during which he was absent from his regular employment with plaintiff he received as salary from plaintiff $5,000 each year in plaintiff's preferred stock, and, in addition, received cash as follows:

| Fiscal year ending: | Amount |
|---|---|
| June 30, 1943 | $2,705.00 |
| June 30, 1944 | 3,140.00 |
| June 30, 1945 | 2,485.00 |

Plaintiff was permitted to deduct the salary paid Robert while he was engaged in the Civilian Pilot Training program, but was denied the deduction when he entered the employment of the Sikorsky Division of the United Aircraft Corporation as a test pilot of airplanes for use by the military. While employed in the Civilian Pilot Training program and as a test pilot for the Sikorsky Division of the United Aircraft Corporation, Robert rendered no substantial service to plaintiff, except, plaintiff's brother James F. Nields, Jr., the president of the company, having entered service with the Red Cross and having been sent overseas, was in no position to supervise the company's business, top supervision of it devolved upon Robert, as vice-president. However, this supervision consisted of but little more than reviewing reports sent him and conversations with employees of the company relative to company business, and attendance on meetings of the Board of Directors.

It will be observed that the Act quoted heretofore allows a salary deduction only for "personal services actually rendered." This section, however, has been construed to permit a deduction of salary paid for services rendered in the past or as an inducement for the employee to continue his connection with the company and return to it at the expiration of his leave of absence. Such payments are considered "ordinary and necessary expenses", within the meaning of 23(a)(1)(A) of the Revenue Code. They may also be considered to be payments on account of services to be actually rendered on return from leave of absence. Kilpatrick v. United States, 52–1 U.S.T.C. par. 9303 (S.D.N.Y.1952); Burwell, Inc., v. United States, D.C.W.D.S.C.1953, 113 F.Supp. 26; Berkshire Oil Co., 1947, 9 T.C. 903;

N. B. Drew, 1949, 12 T.C. 5; Heyer Products Co., Inc., 6 T.C.M. 1196 (1947); Hemmenway-Johnson Furniture Co., Inc., 7 T.C.M. 330 (1948); C. Morris Watkins, 9 T.C.M. 995 (1950); Silvio Amoroso, 10 T.C.M. 186 (1951); John L. Ashe, Inc., 11 T.C.M. 194 (1952); Article 108, Treasury Regulations 45 (1920 Ed.).

Amounts paid as pensions are allowable under the regulations, under certain circumstances, and amounts paid to persons in the military service, who are expected to return to their former employment, are allowable under certain circumstances.

In many instances, when a person enters upon his employment he does so in the expectation that an amount shall be paid to him currently for his services, and, also, an amount to be paid later as a pension. Since the pension is for services actually rendered, it has been held that such sums are deductible.

Likewise, if an employee has a long period of illness, during which the company continues to pay his salary, such payments are deductible, because they are paid partly in consideration of past services, as an inducement for him to return, and for services to be rendered when the employee does return to work. His salary is paid, in part, at least, because the company thinks that it is to its profit to pay it in order to secure the employee's services in the future, and on account of those services.

For the same reason, payments of salary made to a person who enters the military or naval service during the war, with the expectation of returning to his prior employment after his discharge therefrom, are held to be deductible. The allowance of such a deduction is permissible under the Act only on the theory that when the Act permits the deduction of compensation for services actually rendered, it refers to services rendered either currently, or in the past, or on account of services to be rendered in the future. In the latter case they are in the nature of a retainer, paid to insure the availability of one's services when needed, and on account of his future service.

Viewing the case from this standpoint alone, we see no logical distinction between the amounts paid to Robert during his period of service as a civilian in teaching Air Force cadets how to fly and during his period of service with the Sikorsky Division of the United Aircraft Corporation in testing the airplanes which the cadets would fly after he had approved them. If the company is entitled to deduct the salary paid him while he was employed in the first capacity, it would seem it is entitled to the deduction while he was employed in the second. In both capacities he was employed, not by the Government of the United States, but by private corporations. While he was instructing cadets how to fly he was employed by a school which had a contract with the Air Force to furnish instruction, and while he was testing airplanes for the cadets to fly he was also employed by a private company. The amounts paid him by plaintiff during both periods can be lawfully deducted only on the theory that they were payments made to induce his return to his former employment and for services to be rendered when he should return to work.

However, the payments of salary made while Robert was employed by Sikorsky do not come within the letter of article 108 of Regulations 45 (1920 Ed.), promulgated under the Revenue Act of 1918, which contained a provision identical with that contained in the Internal Revenue Code of 1939. This same provision has been carried down in subsequent revenue acts. This article provided for deductions of amounts paid for pensions, for amounts paid as compensation for personal injuries received, and for amounts paid to an employee's widow or heirs, in recognition of services rendered in the past. It also contained this provision:

"Salaries paid by employers during the continuance of the war to employees who are absent in the

military or naval service or are serving the Government in other ways at a nominal compensation, but who intend to return at the conclusion of the war, are allowable deductions."

It is, of course, well established that repeated re-enactment of an Act that had been construed by the Department charged with its enforcement evidences Congressional sanction of the construction the Department has placed upon it.

While Robert was employed by the Sikorsky Division of the United Aircraft Corporation, he was not in the military or naval service, nor was he serving the Government in any other way, and, hence, it is said that the salary payments are not allowable. But the question is not, do they come within the regulation, but do they come within the Act.

The regulation is not an extension of the provisions of the Act, nor can it be a limitation upon it. It is valid only as a proper construction of the Act.

Now, the Act permits a deduction for salaries paid for services "actually rendered." The regulation recognizes that the payment does not have to be paid for services currently rendered; they may have been rendered in the past, as in the case of pensions, or in the future, as in the case of persons in the military service who expect to return to their former employment. The Act is silent on whether the services must have been rendered currently, or could have been rendered in the past, or are expected to be rendered in the future. But the regulation construes the Act to allow the deduction for past and for future service. This construction apparently has been approved by Congress by repeated re-enactment of the statutory provision.

The re-enactment of the provision cannot be construed to limit Congressional approval to the deductions mentioned in the regulation, i. e., pensions, workmen's compensation, salaries paid while in the military service, etc., and for these things only, because this would mean Congressional approval of a departmental extension or limitation on the Act, and this is beyond the power of the Department; the Department can only construe, not enlarge or limit. Hence, Congressional re-enactment means approval of the construction, not approval of an attempted enlargement or restriction.

The construction approved is that the services for which the payment is made may have been rendered in the past or as an inducement for future service and on account of service in the future. The Act so construed permits the deduction for salary paid Robert while employed by Sikorsky, as well as when he was employed to instruct Air Force cadets.

Thus the regulation cannot be relied upon to deny the deduction; it, rather, supports the construction of the Act that permits it.

Since the salary payments were made by the company, not as a gratuity, but to induce continued service and for services to be rendered on return, we think they are deductible, as a proper expense of carrying on the business, and as salary for services actually rendered. We see no logical distinction between the payments made to him while he was employed by a school to give instruction in flying to Air Force cadets, and the payments made while he was employed to test airplanes for the cadets to fly.

Plaintiff is entitled to recover, together with interest, and judgment will be entered to that effect. The amount of recovery will be determined in further proceedings under Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, MADDEN, Judge, and McLAUGHLIN, District Judge, sitting by designation, concur.