DELORES BUSSABARGER, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4163–66—4165–66. Filed August 14, 1969.

---

[1] Proceedings of the following petitioners are consolidated herewith: Robert A. and Delores Bussabarger, docket No. 4164–66; and Robert A. Bussabarger, docket No. 4165–66.

*Stanbery Foster*, for the petitioners.
*Gary C. Randall*, for the respondent.

822

## OPINION

The principal issue presented is whether salary, FICA, and pension fund payments made by the petitioner, Dr. Robert A. Bussabarger, in 1963 and 1964 to or on behalf of his former medical secretary, Janice Edwards, are deductible as ordinary and necessary business expenses.

Section 162(a) of the Internal Revenue Code of 1954[2] provides in pertinent part:

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

The question of what constitutes ordinary and necessary business expenses within the meaning of section 162(a) is one of fact to be determined from all of the facts and circumstances of the particular case. The burden of proof is upon the petitioner.

It has been stipulated that Janice actually performed no services for the petitioner from 1961 until her death in December 1964. There is

---

[2] Unless otherwise indicated, all Code references herein are to the Internal Revenue Code of 1954.

also no evidence or even suggestion that she was not adequately and fully compensated for the services rendered by her prior to April 1960 when she was confined in the Firland Sanatorium or during the period she did part-time work in 1961. Accordingly, the amounts paid to her or on her behalf during the taxable years 1963 and 1964 did not constitute compensation for personal services actually rendered during the taxable years or for services previously performed. There is no contention that the amounts in question were paid pursuant to the "pension fund" (which petitioner described as a trust fund for the payment of retirement benefits and not for the payment of sickness benefits), or to the "vacation and sick leave" plan adopted by petitioner in 1962.

Petitioner's principal contention is that the payments in question were made to Janice in the hope that this might insure her return to employment at the clinic upon the restoration of her health, and that such payments were therefore ordinary and necessary expenses related to the carrying on of his medical practice within the meaning of section 162(a).

Petitioner testified that Janice was a "certified medical secretary" (a term not otherwise defined herein) but was not a nurse. Her duties consisted of keeping patients' charts and attending to billing procedures—sending out checks, bills, and notices regarding delinquent accounts. He also stated that Janice was a very efficient employee and that "accredited medical secretaries" were difficult to obtain in the immediate community in which he practiced.

We do not question that Janice was an efficient employee and that her work had been beneficial to petitioner's practice in the past. We also do not doubt that experienced medical secretaries were difficult to obtain in the community. The fact remains, however, that another employee of the clinic took over Janice's duties after she left in 1960 and continued to perform such duties until after 1965, when she retired.

We are convinced, upon careful consideration of all the facts and circumstances presented herein, that the continued payment of the salary and other benefits in question was for personal reasons rather than for business purposes.

Janice had been in petitioner's employ since 1948. He admitted on the witness stand that he had a personal concern and feeling of responsibility for her and also admitted he told the revenue agent who investigated his returns that he had had a more intimate personal relationship with her during her employment. The fact that he maintained her on a small farm which he owned in Oregon during the last 3 years of her life is also indicative of personal concern. Finally, petitioner's studious avoidance of questions concerning Janice's mental condition and the nature and duration of her illness would suggest

that petitioner did not expect her to be able to return to her work.

In support of his contention herein, petitioner has cited a number of authorities relating to various concepts to be considered in determining whether an expenditure is a business or nonbusiness expense. With one exception they dealt with factual patterns substantially different from that of the instant case and are of limited value herein.

*Ware Knitters, Inc.* v. *United States*, 168 F. Supp 208 (Ct. Cl. 1958), is the only case cited by petitioners which involved salary continuation payments made to an employee during a period of absence from his regular employment. In that case Robert L. Nields, a vice president and director of the plaintiff corporation, was absent from his regular employment from July 1942 to September 1945.

Robert first entered the civilian pilot training program in July 1942, and in August 1942 enlisted in the Army Air Corps Enlisted Reserve but continued in the civilian pilot training program and, after completion of his course on September 29, 1942, was rated as an instructor. Thereafter he was engaged by a civilian school, which had a contract with the Army, in instructing Air Force cadets to fly. For this service he was paid a salary by the school ranging from $150 to $400 per month. He was discharged from the Army Air Corps Enlisted Reserve on April 3, 1944, and immediately severed his connection with the civilian pilot training program and accepted employment with the Sikorsky Division of United Aircraft Corp. as a production and test pilot of airplanes manufactured for use by the military, at a salary of something over $400 per month. He continued with this company until the cessation of hostilities in September 1945, and then returned to his regular employment with the plaintiff.

During his employment as an instructor and test pilot, Robert also performed a limited amount of supervisory service for the plaintiff which consisted of reviewing reports sent to him and conversations with employees concerning company business. He also attended directors meetings.

During each year of his absence Robert received salary payments from the company in preferred stock and cash amounting to $7,705, $8,140, and $7,485 for the fiscal years ending in 1943, 1944, and 1945, respectively. Plaintiff was allowed to deduct the salary paid Robert while engaged in the civilian pilot training program but was denied deduction for the salary paid him while in the employ of Sikorsky.

The Court of Claims determined that the amounts paid him by the plaintiff during the period he was employed by Sikorsky were likewise deductible as ordinary and necessary expenses within the meaning of section 23(a)(1)(A) of the Internal Revenue Code of 1939, the predecessor of section 162(a), stating that such payments were made "to induce his return to his former employment and for

services to be rendered when he should return to work." The Court cited article 108 of Treasury Regulations 45 (1920 ed.)[3] as well as a number of decisions (by other courts), each of which involved wage continuation payments made to an employee while in the military service. Neither *Ware Knitters, Inc., supra,* nor the cases cited therein involved wage continuation payments made to an employee during a long period of illness such as we have in the present case. It is clearly distinguishable. Cf. *Brandtjen & Kluge, Inc.,* 34 T.C. 416, 440 (1960).

*Snyder & Berman, Inc.,* 41 B.T.A. 1180, affd. 116 F. 2d 165 (C.A. 4, 1940), and *Dreikhorn Bakery, Inc.,* a Memorandum Opinion of this Court dated May 12, 1948 (docket No. 14054), cited by respondent, are similar to the present case in that they involved salary continuation payments made to an employee of the taxpayer during an extended period of illness. In the *Snyder & Berman* case, payments made in 1936, 1937, and 1938 to the former assistant secretary-treasurer of the taxpayer, who had suffered a nervous breakdown in 1934 and was receiving mental treatment in a VA hospital, were held not to be deductible as ordinary and necessary business expenses. In the *Dreikhorn Bakery* case, payments made in 1943 to a former employee who became ill in 1937 were held to be in the nature of personal expenses and not ordinary and necessary expenses of the taxpayer's business. See also *Desmond's, Incorporated,* 15 B.T.A. 738 (1929), in which the salary paid to the former president of the taxpayer in 1919 and 1920 who became physically and mentally incapacitated in 1914, was held not an ordinary and necessary business expense.

In each of the above cases there was a blood relationship between the recipient and the officers or controlling stockholders of the taxpayer, an element which is not present in the instant case. We are nevertheless of the opinion that the payments involved herein were of a personal nature, motivated by the personal concern and feeling of responsibility which petitioner had for his former medical secretary, and are therefore not deductible as ordinary and necessary business expenses under the provisions of section 162(a). We so hold.

## Issues 2 and 4

Petitioner contends that the entire amount of the expenses attributable to the Christmas parties hosted by him in 1963 and 1964 are

---

[3] Art. 108, Regs. 45 (1920 ed.), promulgated under the Revenue Act of 1918, contained the following provision:

Salaries paid by employers during the continuance of the war to employees who are absent in the military or naval service or are serving the Government in other ways at a nominal compensation, but who intend to return at the conclusion of the war, are allowable deductions.

See also I.T. 3417, 1940–2 C.B. 64, and I.T. 3602, 1943–1 C.B. 64.

deductible as entertainment expenses directly related to and associated with the active conduct of his profession, under the provisions of section 274(a).[4] It was stipulated that approximately 150 persons attended each of the parties of whom approximately one-third were employees of petitioner or of the hospital in which he practiced and that the other two-thirds were friends, neighbors, and patients of the petitioner. The costs, $649.05 in 1963 and $918.65 in 1964, were also stipulated. Respondent allowed the deduction of one-third of such costs which were attributable to the entertainment of employees and disallowed the deduction of the two-thirds attributable to the entertainment of friends, neighbors, and patients.

Other than the stipulated facts referred to above, petitioner has offered no evidence to show that the disallowed items were directly related to or associated with the active conduct of his trade or business. His uncorroborated, self-serving statement is not sufficient. As stated in H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 425:

if the group of persons entertained is large or the distractions substantial, the cost of the entertainment will not be deductible, in the absence of a clear showing of a direct relationship to the active conduct of the trade or business.

---

[4] SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES.

(a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.—

(1) IN GENERAL.—No deduction otherwise allowable under this chapter shall be allowed for any item—

(A) ACTIVITY.—With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or

(B) FACILITY.—With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business,

and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business.

\*      \*      \*      \*      \*      \*

(d) SUBSTANTIATION REQUIRED.—No deduction shall be allowed—

(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

(3) for any expense for gifts,

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.

And in S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 734, it is stated:

It will not be sufficient that the entertainment expense is vaguely or remotely connected with a business motive; it must be demonstrated that the predominant purpose of the expense is to further the trade or business of the taxpayer. Where goodwill generated by the expense is vague or where the possibility of the expenditure resulting in the production of income is remote, no deduction will be permitted.

We hold that petitioners are not entitled to deductions for the Christmas party expenses in excess of the amount allowed by respondent. See *Wm. Andress, Jr.*, 51 T.C. 863 (1969); *Vaughn V. Chapman*, 48 T.C. 358, 366 (1967); *Reginald G. Hearn*, 36 T.C. 672, affd. 309 F. 2d 431 (C.A. 9, 1962), certiorari denied 373 U.S. 909.

For similar reasons, we hold that petitioners are not entitled to deduct the cost of fishing trips taken by Dr. Bussabarger in 1963.

## Issue 3

This issue involves deductions claimed by petitioners as business bad debts for advances made to Janice from 1958 to 1964, the outstanding balance of which at the time of her death was $710.77, and a loan which petitioner made to George Walters, a former part-time janitor, in 1963 in the amount of $300. Neither amount was represented by a note. Petitioners offered no evidence that said advances or loans constituted business rather than nonbusiness bad debts, or that they became worthless in 1964. Moreover, petitioners have not discussed this issue in their briefs and are deemed to have abandoned it. Respondent's determination of this issue is sustained.

## Issue 5

Petitioners claimed deductions for automobile expenses and depreciation for 1964 in the total amounts of $1,879.47 and $1,665.20, respectively. No mileage or expense records on the automobile were kept by petitioners. It was stipulated the total mileage for 1964 was approximately 23,000 miles. Respondent determined that 14,172 miles or approximately 60 percent was for business usage and, accordingly, disallowed 40 percent of the claimed operating expenses and of the claimed depreciation as attributable to personal use. Petitioners have failed to establish that they are entitled to deductions in excess of the amount allowed by respondent.

## Issue 6

Petitioners claimed deductions as ordinary expenses for the year 1964 for certain expenditures alleged to have been incurred in connection with the operation of a "tree farm," consisting mainly of

planting trees, graveling roads, ditching and bulldozing fire trails. Respondent disallowed all but $21.25 of the total amount claimed on the ground that they were capital expenditures and not ordinary business expenses. Petitioners have not discussed this issue and, accordingly, are deemed to have abandoned it. See also Income Tax Regs., secs. 1.611–3(a) and 1.175–3; *United States* v. *Regan*, 410 F. 2d 744 (C.A. 9, 1969), certiorari applied for June 30, 1969.

### *Issue 7*

Petitioners filed their joint Federal income tax return for 1963 on September 24, 1964, more than 5 months after its due date. No extensions of time for filing were requested or obtained and petitioners offered no evidence that the delay in filing was due to reasonable cause. Respondent correctly determined that petitioners are liable for the addition to tax imposed by section 6651(a). See Income Tax Regs., sec. 301.6651–1(a)(3).

*Decisions will be entered under Rule 50.*