MARY R. WILHELM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilhelm v. Commissioner
Docket No. 3791-81
United States Tax Court
T.C. Memo 1983-274; 1983 Tax Ct. Memo LEXIS 511; 46 T.C.M. (CCH) 176; T.C.M. (RIA) 83274; May 18, 1983. May R. Wilhelm, pro se. Margaret K. Hebert, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge Darrell D. Hallett pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *513 OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Respondent determined deficiencies in petitioner's 1977 and 1978 Federal income tax in the respective amounts of $4,120.80 and $4,341.59, and imposed an addition to tax pursuant to section 6653(a) for the 1978 taxable year in the amount of $217.08. After concessions the issues remaining are as follows: (1) Whether petitioner is entitled to a home office deduction for 1977 and 1978; (2) whether petitioner is entitled to depreciation deductions with respect to her 1973 and 1977 automobiles for 1977 and 1978; (3) whether petitioner must recognize gain on the trade-in of her 1973 automobile; (4) to what extent is petitioner entitled to a deduction for travel expenses for 1977; (5) to what extent is petitioner entitled to deductions for medical expenses for 1977 and 1978; (6) to what extent is petitioner entitled to deductions for interest on an automobile loan and State gasoline taxes for 1977; (7) whether petitioner's 1978 return overstated her taxable salary for that year; (8) to what extent is petitioner entitled to miscellaneous itemized deductions; (9) whether petitioner has substantiated her entitlement to *514 a net operating loss deduction for 1977 resulting from a theft loss incurred during 1979; (10) whether petitioner erroneously claimed a double deduction for 1978 real estate taxes paid; and (11) whether any portion of the underpayment for 1970 is due to negligence or intentional disregard of the rules and regulations. Petitioner was a resident of La Habra, California at the time the petition was filed in this case. HOME OFFICE DEDUCTION
[3]
During 1977 and 1978 petitioner was employed as a nurse by the Rancho Santiago Community College. Her employment duties included teaching, writing for the college booklet, assisting doctors in the clinic, attending to emergency patients, and caring for students with short-term illnesses. The college had no permanent health care facilities, but provided temporary quarters where petitioner performed her duties. Neither was petitioner furnished with permanent office space by the college. Petitioner used a room in her home to prepare work schedules for the clinic, do writing for the college booklet, and order and review reading materials related to her *515 profession. On her 1977 and 1978 returns, petitioner claimed deductions with respect to the use of a portion of her home for matters related to her employment with the college in the amounts of $251.10 and $469.30, respectively. Respondent disallowed the deductions in full. With the enactment of section 280A, Congress imposed stringent requirements upon the deductibility of expenses associated with the use of a portion of a taxpayer's residence for matters related to the taxpayer's employment. No longer do these expenses qualify for deduction where the taxpayer shows only that the home office is appropriate and helpful to the taxpayer in carrying out his employment responsibilities. Rather, among other requirements, the taxpayer must prove that the home office is his "principal place of business." We have defined that to mean the "focal point" of the taxpayer's business activities. Baie v. Commissioner,74 T.C. 105 (1980); Drucker v. Commissioner,79 T.C. 605 (1982). Generally, the focal point of a college professor's activities will be the college *516 where he teaches. This is the case even where the professor spends more time each week in his home office preparing lectures, grading papers, writing, and engaging in other similar activites related to his profession than he does at the college. See Storzer v. Commissioner,T.C. Memo. 1982-328. Applying those rules here, it is clear that the college where petitioner taught and performed health care duties was the focal point of her employment activities, not her home office. Accordingly, we sustain respondent's determination on this issue. AUTOMOBILE DEPRECIATION DEDUCTION - 1973 CADILLAC
During 1977, petitioner owned a Cadillac which she purchased new in 1973 for $13,616. Prior to 1977, petitioner used the Cadillac 46 percent of the time for business purposes. Petitioner claimed and was allowed depreciation deductions on her Federal income tax returns for 1973 through 1976, inclusive, totaling $9,716.60 with respect to the 1973 Cadillac. Petitioner claimed, and respondent disallowed, depreciation on the automobile for 1977 totaling $3,600. It is fundamental that *517 depreciation is determined by reference to basis. Where property is used in part for business and in part for personal purposes, basis for purposes of calculating depreciation must be allocated between the two uses. Specifically, the amount of basis qualifying for depreciation is limited by a percentage equal to the percentage of time the property is used for business purposes. Section 1.167(a)-5, Income Tax Regs.; Bussabarger v. Commissioner,52 T.C. 819, 829 (1969). In addition, basis must be adjusted downward for prior year's depreciation allowed or allowable, whichever is greater. Section 1016(a). In the instant case, petitioner's basis (before adjustments) in that portion of the cost of her 1973 Cadillac allocable to business use was $6,264.35 (46 percent of $13,616). After decreasing petitioner's basis in the 1973 Cadillac by prior depreciation deductions claimed (and allowed) in the amount of $9,716.60, [3] petitioner had no adjusted basis with respect to which depreciation could be claimed for 1977. A taxpayer is not entitled to a depreciation deduction when the asset has already been fully depreciated. See Brown v. Commissioner,T.C. Memo. 1979-443 *518 and section 1.167(a)-1, Income Tax Regs. Accordingly, it is clear that respondent's determination disallowing the petitioner's depreciation deduction claimed in connection with the 1977 use of her 1973 Cadillac was correct. GAIN ON TRADE-IN OF 1973 AUTOMOBILE AND DEPRECIATION ON 1977 AUTOMOBILE
In October 1977, petitioner purchased a 1977 Cadillac for $10,797. Petitioner was allowed a trade-in allowance of $1,500 for her 1973 Cadillac as part payment of the purchase price, and the balance of the price ($9,297.16) was financed. After its acquisition by petitioner and during the remainder of 1977, the 1977 automobile was used 12 percent of the time for business purposes. During 1978, the automobile was used by petitioner for business purposes 29 percent of the time. Petitioner reported no gain or loss on the disposition of her 1973 automobile on her 1977 return. She claimed depreciation *519 with respect to the 1977 Cadillac of $720 for 1977 and $4,318 for 1978. In the notice of deficiency, respondent disallowed the 1977 depreciation and all of the deductions claimed on the 1978 return regarding the 1977 automobile, including depreciation. Respondent conceded at trial that petitioner is entitled to the claimed "out of pocket" expenses for 1978 with regard to the automobile, but contended petitioner is entitled to no depreciation for 1978. In addition, respondent determined in the deficiency notice for 1977 that petitioner must recognize gain on the trade-in of the 1973 automobile of $4,579. In the stipulation of facts, respondent modified his position as to the amount of gain to be recognized in connection with the trade-in of the 1973 automobile in 1977 (in paragraph 6, respondent contends the gain should be $3,267.30; in paragraph 19, calculations are set forth showing gain of $4,143). On brief, respondent contends that under section 1031, petitioner need recognize no gain on the disposition of the 1973 automobile, but that petitioner has a negative basis in the 1977 automobile, such that she is entitled to no depreciation on it. Central to respondent's original *520 position (in the notice of deficiency) that petitioner had recognized gain arising out of the 1977 trade-in of her 1973 automobile, as well as his current position that petitioner has a negative basis in the 1977 automobile, is the issue as to the consequences of petitioner's being allowed depreciation on the 1973 automobile for years prior to 1977 in a total amount exceeding her "business basis" in the automobile. In this regard, respondent took the position (up until filing his brief) that depreciation petitioner claimed in prior years on the 1973 automobile created a negative basis to the extent it exceeded the portion of the original cost (46 percent) allocable to business use, and that this situation gave rise to recognized gain on the disposition of the automobile. On brief, respondent conceded the gain recognition issue, based upon the notion that the trade-in of the 1973 automobile in connection with the acquisition of the 1977 automobile qualified as a nontaxable exchange under section 1031. But respondent still maintained that petitioner had a negative basis in the 1973 automobile (due to depreciation being claimed in excess of the "business" portion of basis), and that *521 the negative basis carries over under section 1031, to the basis of the 1977 automobile. Respondent has overlooked his own position that an asset cannot have a negative basis. In this respect, in Hall v. Commissioner,595 F.2d 1059 (5th Cir. 1979), the Court's opinion states that the Government in that case conceded on appeal that petitioner had no gain on the sale of an asset because depreciation claimed in years prior to the sale exceeded the assets's basis, and it sets forth the following statement made by the Government in its brief at p. 1060: * * * Essentially, taxpayer was assigned a 'negative basis' contrary to the long-standing [4] position of the Internal Revenue Service. * * * Accordingly, we conclude that in determining petitioner's basis in the automobile involved, respondent's long-standing position should be followed and basis should not be reduced below zero. In reaching *522 this conclusion, we have considered authorities which raise some question as to whether the applicable Code sections preclude altogether the concept of negative basis. See Easson v. Commissioner,294 F.2d 653 (9th Cir. 1961), revg. 33 T.C. 963 (1960); Comment, Negative Basis, 75 Harvard Law Review 1352 (1962). However, in view of the context in which the matter is presented here, we do not consider it appropriate to resolve this complex issue on the merits in this case, particularly in view of the very recent statement of the Supreme Court in Commissioner v. Tufts, 461 U.S.     (May 2, 1983). We agree with respondent that, because petitioner's 1977 automobile was acquired in a transaction qualifying for nonrecognition treatment under section 1031, its basis must be determined in accordance with section 1.1031(d)-1, Income Tax Regs.[5] That section provides that the basis of the acquired property shall be the same as the basis of the property traded in, plus any additional consideration given. In determining *523 the additional consideration paid for the 1977 automobile, respondent fails to recognize that not only did petitioner pay $9,297, but she paid the tradein value of the personal portion of the 1973 automobile. That amounts to $810 ($1,500 X 54 percent). Therefore, the total additional consideration paid for the 1977 automobile is $10,107. Petitioner's depreciation basis (i.e., the business portion) is 12 percent of that amount for 1977, and 29 percent for 1978. We leave to the Rule 155 computation the precise amount of depreciation resulting from this determination. 1977 TRAVEL EXPENSES
During 1977, petitioner took a trip to Portugal, departing the United *524 States on July 19, 1977, and returning on August 8, 1977. During her tour, petitioner rented a car and drove through the country. A portion, but not a majority, of her time in Portugal was spent visiting medical clinics. The rest of the time was spent touring and sightseeing. Petitioner maintained a daily diary of her activities during the trip. Petitioner claimed as a deduction on her 1977 return the expenses associated with her Portugal trip totaling $2,659. Respondent disallowed the deduction in its entirety. We agree with respondent. Travel expenses, claimed as educational expenses, are deductible only if the expenses are directly related to the duties of the taxpayer in his employment. Travel is considered directly related only if the "* * * major portion of the activities during [the trip] is of a nature which directly maintains or improves skills required by the individual in [his employment] * * *." Section 1.162-5(d), Income Tax Regs. These regulations "* * * place a substantial burden on the taxpayer to demonstrate that the travel provided *525 direct and specific training helpful in the taxpayer's job. * * *" Krist v. Commissioner,483 F.2d 1345, 1348 (2nd Cir. 1973); see Marlin v. Commissioner54 T.C. 560, 566 (1970). Applying those tests here, we conclude that petitioner has not met her burden of showing the direct and specific relationship between the trip and her employment that is necessary to qualify the trip expenses for deduction. We have no doubt that petitioner's visits to and observations of the clinics in Portugal provided her with knowledge and insights which were helpful to her in connection with her nursing profession. But the record does not disclose specific training or research petitioner undertook in Portugal which could be utilized directly in connection with her college employment. Moreover, a substantial portion of petitioner's time was spent in ordinary sightseeing activities (the fact that petitioner was sometimes accompanied in these activities by clinic personnel does not, in our view, make the activities business related). Accordingly, we conclude that the Portugal trip was primarily personal in nature and the costs associated with it therefore do not *526 qualify for deduction. Petitioner also claimed as a deduction on her 1977 return travel expenses associated with business trips to San Diego and San Francisco totaling $282. Respondent now concedes that the full amount claimed is deductible. However, it has also been stipulated that petitioner received reimbursement for these trips totaling $263. Accordingly, petitioner is entitled to a net deduction of $19. 1977 MEDICAL EXPENSES
As a result of the parties' stipulation, the only issue remaining for decision regarding petitioner's allowable deduction for 1977 medical expenses is the amount of medical expense petitioner incurred at the Scripps Clinic. Petitioner incurred physician charges at the clinic during 1977 totaling $451.60 and hospital charges of $303. Petitioner made a partial payment of these charges by check on July 5, 1977, totaling $250. The payment was applied by Scripps by crediting doctor charges by $150 and hospital charges by $100. In arriving at her total claimed deduction for medical expenses for 1977, petitioner included not only the charges made by Scripps for hospital and doctors, but the $250 partial payment she made which was applied against *527 these charges. She was clearly in error in this regard. Respondent's position that petitioner incurred deductible medical expenses totaling $754.60 at the Scripps Clinic is sustained. 1978 MEDICAL EXPENSES
On her 1978 return and in arriving at her deduction for medical expenses, petitioner claimed expenditures for medicine and drugs totaling $1,032.56, and for doctors, hospitals and medically related transportation totaling $2,129.42. She also showed reimbursements for these expenses totaling $945.86. Based upon the documentary evidence and petitioner's testimony, we find that petitioner incurred during 1978 deductible expenditures for medicine and drugs totaling $1,032.56, and for doctors, hospitals and transportation totaling $2,129.42, and that petitioner was reimbursed for these expenses to the extent of $945.86. 1977 GASOLINE TAX AND AUTOMOBILE INTEREST
Petitioner paid $82 during 1977 on an automobile loan. On her 1977 return, she claimed this amount both as an itemized deduction and she included it in automobile expenses which were claimed as employee business and medical expense deductions. Respondent determined that the total expense should be allocated *528 between itemized deductions and business and medical expense deductions, based upon the relative percentage of time the automobile was used for the various purposes. The result of respondent's adjustment is to allow petitioner deductions equal to the full amount of, but no more than, the total item paid. Respondent is clearly correct and is sustained on this issue. Likewise, petitioner claimed State gasoline taxes paid totaling $85 both as an itemized deduction and as employee business and medical expenses. Respondent's allocation of the total taxes among itemized deductions, employee business expenses, and medical expenses is sustained. 1978 SALARY INCOME
On her 1978 return, petitioner reported wages of $27,608.49, and attached to the return a Form W-2 issued by her employer, the Rancho Santiago Community College, showing gross wages for 1978 in the same amount. During administrative processing of petitioner's case, and at trial, petitioner contended that the W-2 issued by her employer overstated her taxable wages for 1978. In support of her contention, petitioner submitted copies of her monthly payroll stubs for 1978 showing gross wages of $26,240. Respondent contended *529 at trial that the reason for the discrepancy between the Form W-2 and the payroll stubs submitted by petitioner is that petitioner received an additional payroll check in April 1978, reflecting salary due for the years 1971 and 1972. After trial, both parties submitted additional exhibits which establish that petitioner was issued by her employer a check in April 1978 totaling $7,368.24. This check included a nontaxable workmen's compensation reimbursement of $2,449.75. The evidence now before the Court clearly establishes that petitioner received gross payments from her employer during 1978 totaling $33,608.24. Included within that amount are tax sheltered annuity payments, excludable from gross income, totaling $3,550, and workmen's compensation reimbursement, totaling $2,449.75. Therefore, the amount of salary reported by petitioner on her 1978 return as filed correctly reflects the taxable salary in fact paid to her during the year. 1978 MISCELLANEOUS DEDUCTIONS
Petitioner claimed as miscellaneous itemized deductions on her 1978 return amounts totaling $619.69. Respondent allowed $66.85 of this amount in the notice of deficiency, and disallowed the balance. At *530 trial, respondent stipulated petitioner is entitled to an additional $73. Of the remaining items in controversy we find as follows: (1) Petitioner made payments during 1978 of $17.10 to the Diabetes Association, $27.57 to the Smithsonian Institution, and $25 to a birth defects association. These payments qualify as charitable contribution deductions for 1978; (2) Petitioner paid $12.50 during 1978 to the Pacific Coast College Health Assn. This payment qualifies as an employee business expense for 1978; (3) Petitioner paid fees during 1978 for American Express and Carte Blanche card memberships. These cards were used by petitioner during 1978 for personal purposes. Petitioner has not sustained her burden of proving that any portion of these fees qualify as an ordinary and necessary business expense; and (4) Petitioner has not provided sufficient substantiation to prove her entitlement to a deduction for any other items included within the $619.69. 1978 REAL ESTATE TAXES
Petitioner paid real estate taxes on her home during 1978 totaling $543.75. On her 1978 return she claimed this same amount twice as itemized deductions: once as real estate taxes and once as personal *531 property taxes. Respondent's disallowance of the $543.75 deduction as a personal property tax is clearly correct and is sustained. 1979 THEFT LOSS CARRYBACK DEDUCTION
Petitioner's home was burglarized in 1979. Petitioner reported the theft to local authorities, and indicated at the time of the report (January 24, 1979) that the total value of the items stolen was estimated at $13,000. She did, however, tell the authorities that she would provide a more detailed list after inventorying her belongings. A claim was thereafter made by petitioner with her insurance carrier, which was subsequently paid to the extent of $2,874.07. Reimbursement for jewelry, furs, and cash was restricted to the policy limits of $600. At trial, petitioner contended she is entitled to a deduction for 1977 as a result of the 1979 theft loss. Respondent does not dispute that petitioner's house was burglarized, but contends petitioner has not substantiated her entitlement to a deduction for the years before the Court in this case. Casualty loss deductions are, for purposes of the net operating loss carryback *532 and carryover deductions, treated as trade or business deductions. Secs. 1.165-7(d) and 1.172-3(a) (3)(iii), Income Tax Regs. Therefore, to the extent petitioner proved that she had a net operating loss for 1979 arising out of the theft loss, then that loss may be carried back to 1976, and, to the extent not fully absorbed by that year's income, carried forward to 1977. But essential to petitioner's claim for a 1977 deduction for this item is (1) adequate substantiation as to te amount of the theft loss for 1979. This requires evidence as to the identity of the items stolen, and their basis and fair market value at the time of the theft; (2) proof as to petitioner's 1979 income and deductions, and the resulting loss, if any, created by the allowable theft loss deduction; and (3) proof as to petitioner's 1976 income and deductions and the amount of the carryback loss remaining for carryover to 1977 after deducting the loss carryback in that year. Petitioner simply failed in her burden of proof in connection with all these requirements. We have no doubt that petitioner suffered a theft loss during 1979. We are also cognizant of a taxpayer's difficulty in substantiating the existence, *533 cost basis, and fair market value of personal items which have been accumulated over the years. But petitioner apparently claims that she had an allowable theft loss deduction of approximately $50,000 for 1979, and that this deduction results in a substantial net operating loss deduction for 1977. There is no evidence whatsoever regarding petitioner's income and deductions for 1976 and 1979, which, as discussed above, is necessary to determine the allowable net operating loss deduction for the year 1977. Further, petitioner's testimony and the various lists and miscellaneous receipts submitted by her to substantiate the claimed theft loss are simply insufficient for the Court to make a finding as to even a reasonably accurate estimate regarding the lesser of the cost or fair market value of the items stolen. Accordingly, we must conclude that petitioner has failed to prove her entitlement to a net operating loss deduction for 1977. 1978 ADDITION TO TAX
Section 6653(a) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of the *534 rules and regulations. It is clear to us that at the very least petitioner's claim for double deductions for her 1978 real estate taxes was due to negligence, so that a portion of the 1978 underpayment is likewise attributable to negligence. Accordingly, we sustain respondent's determination as to this item. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment and on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. The findings of fact and opinion are combined with respect to each issue.↩
3. At trial, petitioner contended that prior years' depreciation amounted to $8,400, although the stipulation of facts contains the higher figure. Even if the correct figure were $8,400, it would obviously make no difference as to our resolution of this issue.↩
4. Consistent with the position taken by the Government on appeal in Hall v. Commissioner,595 F.2d 1059 (5th Cir. 1979), respondent ruled in Rev. Rul. 75-451, 1975-2 C.B. 330↩, that an asset's adjusted basis is not to be reduced below zero.
5. Section 1031 only applies, however, to that portion of the basis in the automobile traded in and the automobile acquired that is attributable to business use. In essence, each automobile must be viewed as two separate assets - the business and non-business portions. Respondent has adopted this view in his Form 2106, Part V, which provides a form for taxpayers to calculate basis where an automobile is used in part for business and part for personal purposes, and is traded in for another automobile, likewise used.↩